In the Matter of the Petition of George Elmer TESTERMAN, Petitioner,

v.

Sam FREDERICH and Marie Frederich, Respondents.

No. 22720.

Kansas City Court of Appeals.

Missouri.

April 6, 1959.

Austin F. Shute, Kansas City, for petitioner.

Lillie Knight, Kansas City, for respondents.

CAVE, Presiding Judge.

This is a proceeding in habeas corpus, instituted in this court by petitioner to obtain the custody of his three minor children alleged to be unlawfully detained by the respondents. Following the issuance of the writ, and the filing of pleadings thereto, this court appointed Honorable William B. Waters, a member of the bar of this state, a special commissioner to hear and preserve the evidence upon the issues joined; to make his findings of fact and conclusions of law; and report the same to this court. The commissioner has returned the evidence so received by him, together with his report containing his findings of fact and conclusions of law. The respondents have filed exceptions to the report, but no exceptions were filed by the petitioner. The case is now before the court for disposition upon the exceptions and the record.

The following preliminary statement of facts will be helpful before proceeding to a discussion of the evidence. In 1940, George Elmer Testerman, the petitioner, was married to Pearl Ann Testerman. The three children involved in this proceeding were born of that marriage. In April, 1953, the wife was awarded a divorce from petitioner, together with the custody of the three children, with the right of reasonable visitation by the petitioner; and allowance of alimony and child support. On January 26, 1956, Pearl Ann Testerman died, and for some time prior thereto and up to the time of the hearing of this cause by the commissioner, the children had been in the custody of the respondents who are the mother and father of Mrs. Testerman and the grandparents of the children. The names and ages of the children are Gale Edward Testerman, almost 18, Sammy George Testerman, 12, and Tighe Reece Testerman, 7.

The respondents allege in their return that, for various and sundry reasons, the petitioner is an unfit person to have the custody of said children, and that it is for the best interests of said children that they remain with respondents. This is the issue for decision. There is no dispute about the applicable principles of law.

The commissioner recommends that the petition be denied; that the custody of the children remain in the respondents; that petitioner be given the right to visit the children during the first Sunday of each month during the winter months; that he also be given the right to the temporary custody of Sammy and Tighe for a period of four days during each of the months of June, July and August; that he be permitted to take said children to his home in Neosho, Missouri; that no provision be made as to the temporary custody of the oldest son, Gale, but that said son be permitted to visit his father as he wishes.

The respondents filed exceptions to the report and contend they should have exclusive custody of the children and the right of visitation should be denied the father.

The record discloses that these children have been the subject of prolific litigation between the mother and father before the death of the mother, and between the father and the grandparents since her death. Following the divorce decree in 1953, there were various motions filed to modify the decree, all resulting in the custody remaining with the mother with the right of reasonable visitation by the father. After the mother's death, and on Feb. 3, 1956, petitioner filed habeas corpus proceedings in the Circuit Court of Jackson County, against these respondents, seeking the custody of said children. A hearing was had and the court denied the petition, but gave the petitioner the right to visit the children on the first Sunday of each month between the hours of 2 p. m. and 7 p. m.; that he should be permitted to take the children from their home for the purpose of said visit, but not out of Jackson County, Missouri; and that in addition thereto, he should be permitted to visit the children in their home on Christmas, Thanksgiving, and on the birthdays of each of said children. Thereafter, and on July 5, 1957, the petitioner filed the present proceeding in this court seeking exclusive custody of the children.

The transcript contains 417 pages of evidence covering a wide range of incidents of conflict and turmoil almost from the time of marriage between petitioner and his wife, and her mother and father, the respondents. It is unnecessary to review in detail this mass of testimony, because the same incidents have been litigated and relitigated in the divorce proceeding; the several motions to modify the same thereafter; and the habeas corpus proceeding in 1956 in the circuit court; all resulting in the petitioner being denied the exclusive control of the children and limited to the right of visitation under certain conditions.

It does appear from the evidence that at the time of the marriage and for two years thereafter, petitioner and his wife lived in Neosho, Missouri; that they then moved to Kansas City where petitioner was employed in various jobs; that in 1945 they purchased a three-story house on Harrison Avenue and converted it into some apartments. They lived in one apartment and rented the others. The income therefrom was about $300 a month. About that time, petitioner became obsessed with the idea that his wife's mother and father, respondents, were Nazi spies and traitors to this country. He continues to have that opinion to this date, and as a result thereof, there have been violent quarrels, bickering, and mutual disrespect and hatred for several years.

The decree of divorce awarded the wife a certain amount of monthly alimony and an allowance for the support of the children. The payments were not kept current, and eventually petitioner conveyed his one-half interest in the home to the three children in satisfaction of the claim for alimony and support. The wife willed her one-half interest to her mother and father, respondents; and since her death, the respondents and the children have lived in one of the apartments in the house, and rented the others.

After the divorce, petitioner returned to Neosho to live with his parents. Shortly thereafter, his father died, and he and his mother continue to live together. They own 23 acres of land adjacent to Neosho and have built three small modern houses thereon. They live in one and rent the other two. For two or three years prior to the hearing before the commissioner, petitioner had been a deputy sheriff of Newton County, and he produced witnesses who testified that he bore a good reputation in that community. However, those witnesses knew nothing about the troubles and conflicts of the family in Kansas City. Petitioner testified that he is financially able to provide for and educate the children, and that he desires to do so. He also testified that he does not use liquor, and has been attending church during the past two years.

It is abundantly clear from the record that the petitioner is possessed of a violent

temper. He concedes as much, but testified that in the last two years he has "turned over a new leaf", and is making an honest effort to be a better father and citizen.

Gale and Sammy, the two older boys, testified that their father had not succeeded in improving the control of his explosive temper but was just as bad as he had always been; and that he would sometimes strike them when he was in a fit of madness. Sammy described his condition thus: " * * * he got mad the last time he was with us, he got real mad, and he just started shaking all over, and he got read in the face and his eyeballs looked like they were about ready to pop out". This particular display of temper was brought on because Gale did not read and discuss an article in a newspaper about Neosho being an All-American City, of which the father was very proud. Both boys testified that they were afraid of him and did not want him to have custody of them. But they referred to a hunting and fishing trip they had made with him near Neosho.

In letters written by petitioner to the children, he has evidenced affection for them and an interest in their welfare. But in the same letters, he has castigated the respondents, and expressed sympathy that the children should be living with such bad characters. However, there is no evidence in the record to support petitioner's obsession that the respondents are not good and reputable people.

Respondent Sam Frederich testified that he was regularly employed and making approximately $6,000 a year; that he and his wife have accumulated savings of about $35,000; that they were willing and able to provide each of the children with a college education if the children remained with them; and that he and his wife had executed wills providing that on the death of the survivor all of their property would be placed in trust for the benefit of the children. Mr. Frederich is 65 years of age and his wife is 62.

Among other things, the commissioner found that "There is no evidence to indicate that they (respondents) have not been extremely good to the children, and judging from testimony by the neighbors and others, and from the appearance and demeanor of the children themselves, respondents have done an excellent job."

Further detailing of the evidence will serve no useful purpose, and might tend to aggravate the present deplorable situation.

█ We are confronted with the perplexing question of what is best for these three boys. In proceedings such as this, there is nothing that so appeals to the sympathetic side of the court as the wise and proper determination of the care and custody of minor children. We recognize the rule of law that a natural parent has the primary right to the custody of his children. But we also recognize that in determining the issue of custody, the one consideration that preponderates all others is the welfare of the children. Their happiness, well being, and future usefulness as citizens are, to a large extent, influenced by the environment of their childhood. Bitterness between adults warps the minds of children and should not be condoned. This is a major responsibility of parenthood, and the father and grandparents should take note of this overriding obligation and conduct themselves accordingly. If so, the mental scars of bitter conflict may be healed so far as the children are concerned.

It is our conclusion that the welfare of the children will be best served by denying the petition, but giving to the father certain rights of visitation as hereafter defined.

Therefore, it is the order and judgment of this court that the petition be denied; that the custody of the three children be and remain with the respondents; that the father have the right of visitation on the first Sunday of each month between the hours of 2 p. m. and 7 p. m.; and for the

purpose of such visits he may take said children out of their home, but not out of Jackson County, Missouri; that petitioner may visit said children in their home on Christmas, Thanksgiving, and on the birthday of each child.

All concur.