Robert J. LE CLAIRE, (Plaintiff) Appellant,

v.

Pataline S. LE CLAIRE, (Defendant),

Eugene LeClaire and Lorraine LeClaire, Respondents.

No. 30794.

St. Louis Court of Appeals.

Missouri.

Dec. 19, 1961.

Motion for Rehearing or for Transfer to Supreme Court Denied Jan. 22, 1962.

Chaim H. Zimbalist, Clayton, for appellant.

George W. O'Lary, St. Charles, for respondents.

WOLFE, Judge.

This is an appeal from an order denying a motion to modify a decree of divorce as the

decree related to the custody of three children. The movant below and the appellant here is the father of the children, and he contends that the court erred in denying a modification of the decree in that its decision is against the weight of the evidence.

On April 11, 1960, the appellant was divorced from his wife Pataline. Three children had been born of their marriage. There were two girls and a boy. The girls were, respectively, eight years and one year and nine months of age, and the boy was age six. The appellant and his three children had been living in the home of Mr. and Mrs. Eugene LeClaire, appellant's brother and sister-in-law. He lived there with the children from October 1959 until two weeks before his divorce, which was granted in April of 1960. He moved from their home two weeks before the divorce to the home of his present wife, but left the children in his brother's home.

He was granted a divorce from his first wife, and the decree provided that the three children should be placed in the custody of Eugene LeClaire and Lorraine LeClaire, his wife, their natural uncle and aunt by marriage. The decree provided that the father should pay $30.00 per week for the support of the children. Twelve days after his divorce he married his present wife, Ruth. She had five children by a previous marriage. The oldest was a son eighteen years of age; the next in line a daughter age sixteen; then two other sons, one thirteen and the other eight. The other was four years of age. They all lived in a home that Ruth had owned prior to her marriage to the appellant.

During the time that the appellant had lived with his brother and sister-in-law, he changed jobs from time to time. He did not recall how many different jobs he had while he was there. He never paid the full amount he had been ordered to pay for the support of the children. He was short of so doing by about $380. He had also borrowed a small sum from his brother, which had never been repaid. A week after

his present marriage he had some disagreement with his wife and returned to his brother's house, but he was persuaded to go back to his wife by his sister-in-law. His present wife telephoned the sister-in-law and told her they were having quite a bit of discord, and the sister-in-law attempted to bring about a better understanding between them. The present wife of the appellant is considerably older than he is, and appellant's sister-in-law attempted to persuade him "to grow up and be a man" in her efforts to bring about harmony between them. The appellant telephoned his sister-in-law on other occasions to complain about his wife.

He continued to live with his wife and his five stepchildren in his wife's home. Both he and his wife testified that they were happily married, and that they could make room for three more children. She received $50.00 a week from her former husband for support of the childern, and the appellant had a net income of $89.00 per week from the job that he held at the time of the hearing. His wife was unemployed, but she handled all of the money of the household. He worked at a filling station, and his hours were irregular. He did not have meals with the family, and it appears that they had no set time for meals but ate when they individually felt like it. The eighteen-year old son worked and paid $10.-00 a week board. The sixteen-year old daughter had quit school but was considering going back. There were three cars in the family, and payments were being made on two of them. Payments were also being made on the house.

Those of the five children who were attending school went to a public school. There was a difference of religion, but this appeared to be of small importance to the appellant and his wife. She and the children were Catholic, and the appellant was Lutheran. He said that he wanted his own children to go to the Lutheran Church and attend the Lutheran School.

Eugene, the brother of the appellant, and the brother's wife Lorraine, who were given

custody of the children by the original decree, lived in Harvester, Missouri, in their own home. Eugene was 32 years of age, and he and Lorraine had been married for nine years. He was employed as a sheet metal worker by the McDonnell Aircraft Corporation, and had been so employed for eight years. The home in which they live is on a half-acre lot and it is a neat, well cared for house. The children attend a Lutheran School and are regular attendants at a Lutheran Sunday School. They call their aunt and uncle "Mother" and "Dad". They are well cared for and well adjusted in their present home. The father of the children did visit them, but when he did his visits were brief. He gave the children nothing for Christmas on the Christmas that he lived there with his brother, and he did not bother to wake up on Christmas morning to watch the children enjoy the presents provided by their aunt and uncle.

Appellant wanted the children in the Lutheran Church and School, and made no objection to the manner in which the children were being cared for. Eugene and Lorraine brought the children to visit him, and he was free to take them out when he pleased. Eugene and Lorraine brought the children to visit appellant on Father's Day. He and his wife had just returned from a week's vacation which they had taken by themselves. Lorraine called his attention to the fact that he had paid nothing recently for his children's support, and he said, "We will discuss that in the morning." The next day he came to Eugene's home and asked Lorraine if she had the children's clothes ready and indicated that he wanted to take them. There was some discussion, in which Lorraine told him that she could not surrender custody of the children to him without a court order. This was followed by appellant filing the motion here under consideration. The motion was based on the allegation that since the decree, the appellant had remarried and now had a suitable home in which to keep the children. The natural mother filed a consent to the modification. After filing the motion ap-

pellant made no further effort to see his children, and he had not seen them for four months at the time of the hearing.

Eugene and Lorraine both testified at the hearing of the motion to modify, and both of them said that they simply wanted the court to determine wherein the best interest of the children would be served. They said that they loved the children and would like to keep them, but that they wanted to do nothing to interfere with the father's right to have them if the court thought that it was to the best interest of the children.

The trial court concluded that the plaintiff "lacks responsibility and is obviously dominated by his older wife." It further concluded that the ties between the plaintiff and his wife were "tenuous and shallow", and that their marriage had been somewhat turbulent. As stated, the motion to modify the decree as prayed was denied, but it was modified to permit the plaintiff to have the children on alternate Sundays from 2:00 p. m. to 7:30 p. m.

The appellant contends that the presumption that the best interest of a child is with its natural parent should prevail here, and that the court erred in not modifying the decree and awarding custody of the children to the father. A parent's legal rights at times must give way to the welfare of the child involved. Ex parte De Castro, 238 Mo.App. 1011, 190 S.W.2d 949. Where a change of custody is sought by a motion to modify a decree, we are governed by the rule set forth in Noble v. Noble, Mo.App., 341 S.W.2d 307, loc. cit. 310, wherein this court stated:

"The rules which must guide us in the determination of the issue presented are not in dispute. The burden of proof is on the one seeking a change of custody to show by the preponderance of the evidence, not only that there has been a change of conditions, but also that the welfare of the child requires a change of custody by reason thereof. Birrittieri v. Swanston, Mo.App., 311 S.W.2d

364; Schumm v. Schumm, Mo.App., 223 S.W.2d 122. It is also our duty to review the whole record, and arrive at our own conclusion in the matter, but in performing this duty we must bear in mind that the findings of the trial court should not be lightly disturbed. In fact, such findings will ordinarily be deferred to, unless from a consideration of all the facts and circumstances it appears that said findings are in conflict with a clear preponderance of the evidence so as to disclose a manifest abuse of judicial discretion. Birrittieri v. Swanston, supra; Martin v. Martin, Mo.App., 160 S.W.2d 457; Baer v. Baer, Mo.App., 51 S.W.2d 873; Conrad v. Conrad, Mo.App., 296 S.W. 196; Lampe v. Lampe, Mo.App., 28 S.W.2d 414; Rone v. Rone, Mo.App., 20 S.W. 2d 545; Salkey v. Salkey, Mo.App., 80 S.W.2d 735."

Applying these rules to the facts before us, we can only conclude that the trial court reached the correct conclusion and properly denied the modification sought. At no place in the record is there any expression by either the appellant or his wife of any love or affection for the children. Their testimony primarily related to the fact that they thought that they could squeeze three more children into their present house. It appears that the arrangement made by the original decree was quite satisfactory to them until the appellant was reminded that he had not paid any support money for a while. The home and family life accorded the children by the uncle and aunt is sound and orderly, while life in the home of the appellant is haphazard and at times turbulent, to say the least.

The court properly found that no change of condition beneficial to the children had arisen by reason of the marriage of the appellant, and the judgment is affirmed.

ANDERSON, P. J., and RUDDY, J., concur.