In the Matter of Douglas DUNCAN and David Duncan, Minors.

John T. DUNCAN, Petitioner,

v.

Bert PITTS and Jessie Pitts, Respondents.

No. 49806

Supreme Court of Missouri,

En Banc.

March 11, 1963.

Gragg, Aubuchon & Walsh, by Eugene P. Walsh, St. Louis, for petitioner.

Morie B. Soule, St. Louis, for respondents.

HYDE, Judge.

Habeas corpus proceeding in which the St. Louis Court of Appeals sustained petitioner's motion for judgment on the pleadings but transferred the case here for the purpose of re-examining the existing law under authority of Sec. 10, Art. V, Const., V.A.M.S. See In re Duncan, Mo.App., 360 S.W.2d 361.

Petitioner in his petition filed November 7, 1961, alleged detention of his children by their maternal grandparents; that he was granted a divorce on October 24, 1960, from the mother of the children and was awarded custody of the children by that decree, but that the respondents have refused to turn the children over to him. The children were boys, born April 21, 1957, and May 8, 1958.

The return is summarized in the Court of Appeals opinion as follows: "[R]espondents alleged that the petitioner brought these children to their home in University City and requested respondents to support, care for, and have custody of the children; that acting pursuant to his request, the respondents have done so; and alleged '* * * therefore, * * * the respondents herein, do not imprison, detain, nor restrain * * *' the children. The return also alleged that the petitioner was living with his wife at the respondents' home when he and his wife separated and knew she still resided there but nevertheless instituted service by publication; that no notice was ever given to the mother of these proceedings which were 'ex parte and uncontested' insofar as custody of the children was concerned. Respondents alleged that the circuit court did not have jurisdiction for this reason and its decree was '* * * void, illegal, irregular and invalid.' The return further alleged that the petitioner is not a resident of this state, does not maintain a home in this state, and intends to remove the children from the state, thereby depriving '* * * the State of Missouri of its inherent right of control of said children'; and that the children '* * * since they were infants and are at the present time, wards of the Court of the State of Missouri.' The other allegations of the return deal with the fitness of the petitioner and allege that he is constantly traveling and does not maintain a home of any kind at any place; that he has not the means to care for and support them; that he is a stranger to them with no love or affection for them; that he habitually uses intoxicating liquor to excess and has beaten the children with an 18-inch oak ruler and has a violent and uncontrollable temper; that the children become emotionally upset at the mere sight of him or at his presence; that on occasion they have required medical attention because of this fact; that petitioner '* * * has had several encounters with the police and was sought by the Internal Revenue Service * * *'; that petitioner has

refused to care or provide for the children; that his conduct is 'lustful, lewd and lascivious'; that by a previous marriage petitioner had another child which he did not provide for either; and that petitioner only seeks to remove the children from the respondents and has stated his intention of placing them in a home if successful in doing so. The return also alleged the financial and moral fitness of the respondents."

The return also alleged that "the Order of Publication did not state the object or the general nature of said proceeding to show that the custody of the children would be in any way affected. As a matter of fact, the notice appearing in the publication was completely absent of the fact that the custody of said minor children would be affected in any manner whatsoever." Respondents have also filed a certified transcript of the testimony at the hearing on the divorce petition which only showed that petitioner said he was having his in-laws take care of the children and that he was asking for their control and custody. No testimony was offered as to fitness, ability to support or the welfare and best interests of the children

The Court of Appeals also summarized petitioner's answer as follows: "The answer to the return admits he took the children to respondents' home but alleges that this was when he came to live there with them and their mother, and further admits that there was no personal service on the mother when the divorce was granted. All the other allegations of the return are denied. As new matter, the answer alleges that the respondents cannot collaterally attack the divorce decree, and as grounds therefor alleges that the service on the mother was valid because she had '* * absconded and absented herself from her usual place of abode * * *' at respondents' home and '* * * concealed herself so that the ordinary process of law could not be personally served upon her * * *'; and that respondents cannot

attack this decree because they are estopped to do so, having often told petitioner the mother was not living with them and they did not know her whereabouts. The answer further alleges his fitness and capabilities for caring for the children, and the respondents' unfitness, in that they both work and the 'children have been attended by a paid baby sitter during the day * * *.'"

The Court of Appeals believed that Wakefield case, In re., 365 Mo. 415, 283 S. W.2d 467, required it to enter judgment on the pleadings for petitioner because the divorce decree awarded custody to him, although it felt that to be an unconscionable result if the allegations of the return were true. In the Wakefield case, the mother of the child involved had brought suit for divorce but her husband, the petitioner for habeas corpus, was granted the divorce on his crossbill and custody of their child. The child was placed in the care of petitioner's half sister and her husband, petitioner claimed temporarily until he could make other arrangements. Having remarried and established a home, he asked respondents for the child but they claimed that by a verbal order not incorporated in the divorce decree, custody had been awarded petitioner on condition that the child would be in their care and control. Prior to the habeas corpus, the child's mother had filed a motion which was still pending in the divorce court to modify the decree to vest custody in respondents. The Court of Appeals held it could not review the propriety of the divorce court's award of custody nor alter it but that modification could only be made by that court. On transfer we reached the same result saying (283 S.W.2d 1. c. 472): "[T]he writ may not be employed to interfere with the inherent right and jurisdiction of our circuit courts to determine and award custody of minor children in divorce cases of which they have proper jurisdiction and in which they have exercised that jurisdiction by making a custody award of record."

It is to be noted that in the Wakefield case there had been a full hearing in

the divorce case on a petition and crossbill. Furthermore an application for modification of the divorce decree had been made by a party to the divorce decree and was pending in the divorce court. Thus there was a remedy available and a proceeding pending in a court in which the matter could be heard. In this case, respondents have no standing to proceed for modification of the decree in the divorce court not being parties in the divorce case. Wilson v. Wilson, Mo. App., 260 S.W.2d 770, 772, and cases cited; Secs. 452.070 and 452.120 (statutory references are to RSMo and V.A.M.S.). As the Court of Appeals points out (360 S.W.2d 1. c. 365): "[I]f the mother were deceased, we could then inquire into the charges made against the father because the divorce action would then be abated. In re Wakefield, supra. So far as the welfare of the children is concerned, she might as well be dead. It is also true that if the petitioner here were seeking to enforce his natural right as a parent, we could inquire into his fitness, if that issue were raised. His position is only altered by a decree granting him custody in a case where his fitness was never in fact a question in issue or a hearing had thereon. It would appear that the rule in relation to a court's right to search out the truth, under pleadings such as those before us, should not be so limited. As we construe the Wakefield case, we would have no alternative but to turn the children over to a petitioning father who had a default decree of divorce granting him custody, even though it was alleged that the lives of the children would be endangered thereby."

■ We agree that, where the whole future of the lives of children is at stake, the matter is too important to be decided solely on a legalistic presumption of fitness based on a default decree on a perfunctory hearing of which there was no actual notice, but only publication in which custody of children was not mentioned, when there is no one available to seek modification in the divorce court. In a similar situation, the Supreme Court of Mississippi held evidence should be heard in a habeas corpus case on the issue of fitness of the mother who had been given custody of children in a divorce decree based on publication, and was seeking to obtain the child from paternal grandparents. Neal v. Neal, 238 Miss. 572, 119 So.2d 273. The court held evidence should be heard which was offered to show changed conditions since the divorce decree "relevant to the welfare and best interests of the children" and to the parent's fitness to have their custody. The court cited the statements in 25 Am.Jur. 207, Habeas Corpus, Sec. 82, and 39 C.J.S. Habeas Corpus § 46, p. 585, saying this was the majority rule. See also Roll v. Roll, 143 Kan. 704, 56 P.2d 61. Our decisions have not authorized such hearings except, as the Court of Appeals points out, when one of the parents has died or there has been no order of custody and the parent is seeking to enforce his natural right. Nevertheless, when as here children are in the actual custody of persons with whom both parents have left them and one parent has obtained an order of custody in a default divorce case in which there was only notice by publication with no actual hearing on fitness or welfare of the children, and the other parent has disappeared so that there is no one to seek modification of the decree, our view is that there must be opportunity to hear evidence on this issue, not for the benefit of the adult parties seeking custody but for the welfare and best interests of the children involved.

In McCoy v. Briegel, Mo.App., 305 S.W. 2d 29, where a parent sought by modification of her divorce decree to obtain custody of a child who had been cared for by third parties for several years, the court, although ruling that the third parties could not intervene, appointed an amicus curiae to present to the court the interests of the child involved. By that method the issue of the child's welfare was considered. The Court of Appeals approved this procedure and affirmed the order of the trial court re-

fusing to modify the decree because it found the best interests of the child required that he remain with the third parties.

■ In Ex Parte De Castro, 238 Mo. App. 1011, 190 S.W.2d 949, 951, a habeas corpus proceeding by a parent seeking custody of her child from a third party on the basis of her natural right, the court said: "There is, however, a still further issue which inheres in the case by reason of its subject matter. This is the issue of the welfare of the child, which is an issue always to be kept in view in all legal proceedings involving the custody and control of a minor child as to which the state stands in the relation of parens patriae. In other words, whenever a minor child is brought within the jurisdiction of a court for an adjudication with respect to the question of its custody, the child becomes the ward of the court; and in determining the question of its ultimate disposition, the child's well-being is of paramount consideration, and the rights and claims of the contending parties, even in the case of the parents themselves, must be subordinated to what the court may conclude will be for the best interests of the child. Ex parte Badger, 286 Mo. 139, 226 S.W. 936, 14 A.L.R. 286. * * * In such an instance the nature of the inquiry makes the proceeding one of an equitable nature; and the question of either party's strictly legal right will be measured in terms of the welfare of the child. Ex parte Badger, supra; 25 Am.Jur., Habeas Corpus, secs. 78–80; 39 C.J.S. Habeas Corpus § 41." By analogy with the situations in which a parent is claiming custody by natural right instead of by court decree, and on the same principles, where there is no other forum for determining this issue, because no proper party is available to proceed in the divorce court, and there has never been an actual hearing to determine a child's welfare, our conclusion is that the court may hear and determine this issue in a habeas corpus proceeding. Otherwise stated, the children's mother being absent and unavailable, with no interest in their custody, we hold that the scope of the hearing should be the same as where one parent is deceased.

■ Also for consideration are the provisions of our Juvenile Court Acts of 1957 and 1959, now Secs. 211.011–211.511. By Sec. 211.031, the Juvenile Court is given exclusive original jurisdiction in proceedings "(1) [i]nvolving any child who may be within the county who is alleged to be in need of care and treatment" because of specified situations, including "(b) [t]he child is otherwise without proper care, custody or support." See also Hayes v. Hayes, 363 Mo. 583, 252 S.W.2d 323, 327, and cases cited. Sec. 211.051 provides: "Nothing contained in sections 211.011 to 211.431 deprives other courts of the right to determine the legal custody of children upon writs of *habeas corpus* or to determine the legal custody or guardianship of children when the legal custody or guardianship is incidental to the determination of causes pending in other courts. Such questions, however, may be certified by another court to the juvenile court for hearing, determination or recommendation." Furthermore, Secs. 211.441–211.511 give the Juvenile Court authority to "terminate all rights of parents to a child when it finds that such termination is in the best interest of the child" and certain conditions exist, some of which are alleged in respondents' return herein. As to adoption see Chapter 453. Therefore, the Court of Appeals, on the authority of Sec. 211.051, could certify to the Juvenile Court the questions of the fitness of petitioner to have legal custody of his children and what their best interests and welfare require as to custody.

The cause is remanded to the Court of Appeals for the purpose of hearing evidence on these issues, or in its discretion certifying them to the Juvenile Court for consideration as provided in Sec. 211.051, and making such orders as to custody as it shall deem proper.

All concur.