In the Matter of B. S. P., a Minor,
W. R. P., Petitioner,

v.

W. W. W. and M. L. W., his wife,
Respondents.

No. 32463.

St. Louis Court of Appeals.

Missouri.

Feb. 2, 1967.

Rehearing Denied Feb. 21, 1967.

Thurman, Nixon, Smith & Howald, Hillsboro, for petitioner.

Bahn & Saitz, St. Louis, W. H. S. O'Brien, Festus, for respondents.

WOLFE, Judge.

This is an original action by writ of habeas corpus in which the petitioner seeks to obtain custody of his minor daughter. The respondents are the maternal grandparents of the child and its mother is deceased. The grandparents filed their return to the writ and asserted in the return that the best interests of the child would be served by leaving it in their custody. They alleged that the petitioner was an unfit person to have custody of the child. They alleged he had abandoned the child before the death of his wife, the child's mother, and that he failed to support the child. They further alleged he had asserted that he was not the father of the child. There were other allegations in the return which charged that he drank excessively and that he had no suitable home to which he could take the child if its custody were awarded to him.

The return was denied by the petitioner thus presenting to this court issues of fact requiring trial. Pursuant to § 211.051, RSMo 1959, V.A.M.S., this court certified the cause to the Juvenile Court of the Twenty-third Judicial Circuit, County of Jefferson, State of Missouri, for hearing and recommendations. A hearing on the issues was had and the Juvenile Judge filed with this court a full transcript thereof. He also filed his findings and recommendations. He recommended that the petitioner, the father of the child be awarded custody and the grandparents, the respondents, have here filed their exceptions

to the recommendations the Judge has made.

The first exception to the conclusions of the Judge of the Juvenile Court is that he erred in holding that the respondents had failed to prove that the father was an unfit person to have custody of the child. The second exception is that the Judge of the Juvenile Court erred in not holding that the welfare of the child would be best served by awarding custody to the respondents. The third exception is a contention that the Judge should have recommended permanent custody to the respondents with visitation rights and temporary custody in the petitioner.

In passing upon the exceptions filed we will not limit our review to the specific exceptions set out but we will review the entire record to determine whether or not under all of the evidence adduced we reached the same results as those recommended by the Judge of the Juvenile Court. Our guide in making that determination was set forth by this Court in Ex parte De Castro, 238 Mo.App. 1011, 190 S.W.2d 949. In that case the parent of a child also sought custody of an infant child which, as in the case before us, was then in the custody of its grandparents. In that case we stated that we would not limit our consideration solely to the natural right of the parent but we went on to say at l. c. 951:

"There is, however, a still further issue which inheres in the case by reason of its subject matter. This is the issue of the welfare of the child, which is an issue always to be kept in view in all legal proceedings involving the custody and control of a minor child as to which the state stands in the relation of parens patriae. In other words, whenever a minor child is brought within the jurisdiction of a court for an adjudication with respect to the question of its custody, the child becomes the ward of the court; and in determining the question of its ultimate disposition, the child's well-being is of paramount consideration, and the rights and claims of the contending parties, even in the case of the parents themselves, must be subordinated to what the court may conclude will be for the best interests of the child. Ex parte Badger, 286 Mo. 139, 226 S.W. 936, 14 A.L.R. 286.

" * * * In such an instance the nature of the inquiry makes the proceeding one of an equitable nature; and the question of either party's strictly legal right will be measured in terms of the welfare of the child, Ex parte Badger, supra; * * *."

The De Castro case was cited and quoted with approval by the Supreme Court in the case of In re Duncan, Mo., 365 S.W.2d 567, 4 A.L.R.3d 1270 and is our guide for the determination of this matter.

The petitioner had known the daughter of the respondents since their high school days. They later both attended college in the same town. Early in 1963 they became engaged to be married and planned their wedding for sometime in August. On May 25 they spent the night together in a motel and had sexual intercourse. On July 6 the petitioner was informed by one of the respondents that his betrothed was pregnant. The date for their marriage was advanced and the petitioner married respondents' daughter on July 12, 1963. The girl child, whose custody we are here considering, was born on February 18, 1964.

The physician who attended the mother at the birth of the child testifed that it was a full term baby and that it was conceived around May 26, 1963. The mother was confined in the hospital for two weeks after childbirth as surgery was required a week after the child was born. Upon release from the hospital the mother, the baby and the father, the petitioner, stayed at the home of the respondents. They stayed there for eight weeks before moving back to their own home. After that for

some period of time the maternal grandmother, respondent, went six days a week to her daughter's home to look after her daughter and the baby.

The mother of the child was again hospitalized in December, 1964, for two weeks during which time the baby stayed at the respondents' home. When the child's mother was released from the hospital she again went to the respondents' home and stayed there with the baby and the petitioner until the second week in January.

Again the mother of the child was hospitalized for mental disturbance and given shock treatments. She had twice attempted suicide. She had a great dislike for the petitioner's mother and at her request the petitioner wrote a note promising that in the event his wife died the maternal grandparents should have the child and that his own parents would have no visitation privileges without his and his wife's parents' consent.

The petitioner bought a home and both he and his wife and daughter were living in it when he and his wife had a disagreement and he left her on October 6, 1965. His wife had access to a savings account and he paid all of the bills as they arrived. He made four or five trips back to his home in attempts at reconciliation. On the last trip he made on October 31, 1965, he found his wife unconscious on the floor of the garage. She apparently had succeeded in her third attempt at suicide. He went in to see if the child was safe and found it so. He then called his wife's parents. They again took the child to their home and after the funeral of their daughter they sought to keep custody of it. This gave rise to the present action by the child's father.

Much of the 500 page transcript of the hearing before the Judge of the Juvenile Court consists of evidence offered by respondents in an effort to prove that the petitioner was not in fact the father of their granddaughter. They offered evidence of their daughter's intimate association with other men. No purpose would be served by any further statement regarding the evidence thus offered.

The grandfather respondent is a man 49 years of age. He is a successful businessman who has had many civic, social, church and fraternal activities in the community in which he lives. He has enjoyed a good reputation. His wife is 47 years of age and is well spoken of but there was testimony by the petitioner that at times she drank to excess. This was denied by others. The respondent grandmother was very solicitous of her daughter's and granddaughter's welfare and helped and cared for both of them. The respondent grandfather was liberal in helping the petitioner and his wife set up a home and he loaned them a total of $6,323.24 all of which has been repaid except $1,329.10.

There was evidence that the petitioner had been drunk on two occasions when he was in college. He testified that he did drink in taverns at times. There was evidence that on one occasion when his wife was in the hospital he visited a tavern and danced with some women present and thereafter drove to the parking lot of their apartment and talked with them there. The nature of the conversation was not developed. There was also testimony of some witnesses that they never saw him take care of his child.

The petitioner was active in athletics in high school and college. He saw service in the army and was honorably discharged. He is currently living with his parents. His mother has loved and cared for the child at various times that it was in her custody after the death of its mother. She would take care of it during her son's working hours. Petitioner's parents are highly regarded and have the reputation of being good, responsible people. The petitioner is employed at a salary of $600 per month. He also bears a good reputation and is highly regarded by those who have known him from his early child-

hood to the present time. He lives with his parents in the home which they own.

 The respondents no longer press their charge that the petitioner is not the father of the child. Both the evidence and the strong presumption of the legitimacy of the child born in wedlock leave no doubt that the petitioner is the father. This presumption applies to a child born in wedlock though not conceived in wedlock. Bernheimer v. First Nat. Bank of Kansas City, 359 Mo. 1119, 225 S.W.2d 745; Ash v. Modern Sand & Gravel Co., 234 Mo.App. 1195, 122 S.W.2d 45; F. v. F., Mo.App., 333 S.W.2d 320.

As to the welfare of the child, we have an able and honorable father with a suitable home for the child on the one hand, and indulgent and possessive grandparents on the other. There has been no showing of any unfitness on the part of the father. Ex parte De Castro, 238 Mo. App. 1011, 190 S.W.2d 949, above cited and quoted, contains a further statement at l. c. 959 which is:

"There are two principles of law by which the facts are to be measured in determining the Commissioner's recommendation in the case.

"The first of these propositions is that under our law a parent has a natural right to the custody of his minor child, a right which public policy demands shall be held inviolate, and which, in a contest between the parent and some third person, is not to be denied the parent unless it is made manifest to the court that the parent, for some strong and cogent reason, is unfit or incompetent to have his child, so that the welfare of the child itself demands a different disposition. * * *

"The second and equally important proposition is that the natural parent's right to the custody of his child must be determined with respect to present, existing conditions, with evidence of past con-

ditions being material only to the extent that they clarify and cast light on the existing conditions. * * *"

We find that the welfare of the child will be best served in the custody of its natural father and direct the respondents to give the child forthwith to the petitioner.

ANDERSON, P. J., and RUDDY, J., concur.