Gale STOCKTON, Plaintiff-Appellant,

v.

Sandra Stockton GUTHARY, Defendant-Respondent.

No. 8586.

Springfield Court of Appeals.

Missouri.

May 4, 1967.

W. H. Pinnell, Pinnell & Monroe, Monett, for plaintiff-appellant.

Royle Ellis, Cassville, for defendant-respondent.

HOGAN, Judge.

This appeal is taken from an order of the Circuit Court of Barry County modifying the child custody provisions of a divorce decree. The child involved is Katrina Stockton, who must now be nearly six years old. By reason of circumstances which shall presently appear, Katrina has been in the actual custody of her paternal grandparents. The trial court has resolved this controversy by awarding custody of the child to her mother, giving the grandparents custody for a period of one week beginning July 15 and November 15 of each year until she reaches "school age," and thereafter for the month of July in each year. The father has appealed.

On March 26, 1963, Gale Stockton, the father and appellant, was divorced from Sandra Guthary, the mother, who is respondent here. The action was tried in the same court before the same judge who entered the judgment appealed from. The divorce decree recites that both parties appeared, that the cause was taken on the pleadings and proof, and that the court found for the plaintiff, Gale Stockton. Custody of Katrina, then eighteen months old, was awarded to her father.

On September 2, 1964, Mrs. Guthary filed this motion to modify the custody provisions of the original decree, alleging in substance that since the original order was entered she had remarried and established a home, and could now care for and maintain her child; that since March 8, 1963, the father had been convicted of a felony, had served a sentence in the Arkansas State Penitentiary, and was unfit to have custody of the child; and finally, that Katrina had never actually been in her father's custody, but had been with his parents. The motion concluded with the usual allegation that a change of custody would be in the child's best interest. The father's responsive pleading admitted formal matters but denied everything else, and set up affirmatively that Mrs. Guthary was morally unfit to have custody of the child, that she had no interest in the child, and had failed to provide any care for the child since the divorce. Mr. Stockton admitted that actual custody of the child had at all times been in the paternal grandparents.

On April 21, 1965, the trial court heard this case. Briefly, the evidence was that Katrina had been in the home of Mr. and Mrs. G. B. Stockton, the grandparents, since February 1963. The grandparents lived on a 40-acre farm three miles southeast of Purdy, Missouri. The grandfather was 59 years old, the grandmother 56. Mr. G. B. Stockton was using the land he owned, which included another 40-acre tract, for milk cows. He had nine cows, and also did "upholstery work." The grandparents have a four-room house on their farm which they and Katrina occupy. There is no evidence about the physical environment in which they live nor their financial circumstances, and very little concerning their health. It was the grandparents' testimony, supported by several neighbors, that Katrina is happy, healthy and well cared for. When they were asked about having had actual custody of the child, the grandfather answered, "Well, he [the father] didn't want to take her away. He said that he was going to leave her there with us." The grandmother testified the child's father had said " * * * he wanted to leave her there because we were attached to her and took good care of her." The record also indicates that Katrina has become strongly attached to her grandmother and calls her "Mommy" and "Grandma" interchangeably.

Mrs. Guthary, the child's mother, testified that she was 21 years old on March 8, 1965, and that since her divorce she had married Harold Guthary, her present husband. At the time the motion to modify was filed, she and Mr. Guthary lived at Cassville, Missouri, but by trial time they had established a home at Fayetteville, Arkansas, and intended to remain there. Mr. Guthary was employed by a milk company and earned "about $300.00 a month." Mrs. Guthary and her husband lived in a rented duplex, but owned their own furniture. They were the parents of a child, referred to simply as a "baby 4½ months old." Mrs. Guthary testified that when she lived in Missouri she had visited Katrina at the grandparents' home on an average of once a month and occasionally more often. Mrs. Guthary explained her inability to take Katrina earlier by stating that when she was divorced she was only eighteen, was unemployed, and had no place to take her child.

Mr. Harold Guthary, the mother's present husband, testified that he and his wife were married June 29, 1963. Mr. Guthary was 24 years old, able-bodied and willing to work. He estimated his monthly earnings to be $280.00 to $300.00 per month. He was willing to take Katrina into his own home and support her, saying that he "* * * would treat her as if she was may own."

Gale Stockton, Katrina's father, was present at this hearing but did not testify. Through the interrogation of others, and by documentary evidence, it was established that in March 1964 he had been convicted of two felonies involving fraudulent checks in Arkansas, and had served a term in the penitentiary. Mr. Stockton no longer resided with the grandparents, but had remarried and had a home of his own near Fairview, Missouri. He had made no effort to remove Katrina to his new home, but his mother testified that occasionally he and his present wife " * * * come out there [to the grandparents' farm] to take her to church or somewhere." Since his release from the penitentiary, the father has received "30 days" "on a check" in Barry County, but his present wife "paid him out." Gale and his present father-in-law now "work in the sawmill." As indicated, Gale has said he intends, if awarded custody, to leave the child with his parents.

One or two more specific matters were developed and should be mentioned. In support of his allegation that Mrs. Guthary was unfit to have custody of the child, Mr. Gale Stockton produced a witness who had been the proprietor of a rooming house where Mr. Guthary lived on May 18, 1963, and for sometime thereafter. This wit-

ness testified that Mr. and Mrs. Guthary lived together in one of her apartments in Monett before June 29, 1963, but told her they were married. Both Mrs. Guthary and her present husband vigorously denied that their pre-marital relation had been improper. Mr. Guthary stated that he met his present wife "sometime around the first of the year" in 1963, and that because he worked at night Mrs. Guthary was, as their courtship continued, at his apartment "a big part of the time during the day," and " * * * she would come over * * and fix supper and we would eat supper and watch TV sometimes for a while, and then I would leave and go to work." Mrs. Guthary testified that during the period involved she had actually been living with her parents at Exeter, Missouri.

The appellant also undertook to show that Mrs. Guthary had actually shown very little interest in Katrina while she was with the grandparents. The grandfather testified that Mrs. Guthary "at the first * * * came around pretty good," but "she got to where her visits were a little farther apart * * * and this last year she just made it three or four times, if that many." He added, however, that "sometime just before Christmas or around the first of the year" Mrs. Guthary had come to see Katrina several times, and "came back two or three times the next week" and he had told Mrs. Guthary "she would have to cut down." Mrs. Guthary's testimony was, in effect, that although the grandparents had not prevented her from visiting Katrina, they had discouraged her. Her testimony was that "until we moved to Arkansas" she had gone regularly to see her child "every two weeks or once a month or something like that." This is far from being a complete recitation of all the evidence, but it indicates the kind of situation we have before us.

Both parties have briefed a number of points, of necessity comparing the situation at hand with adjudicated cases, but we consider it unnecessary and probably imprudent to take up and consider each of the separate points individually. The welfare of the child is the prime consideration in any adjudication of its custody, and the rights and claims of the contending parties, even parents, are matters of secondary importance. In re Shepler, Mo., 372 S.W.2d 87, 90–91[2]; In re Duncan, Mo., 365 S.W.2d 567, 571, 4 A.L.R.3d 1270, 1275; Ex parte De Castro, 238 Mo.App. 1011, 1015, 190 S.W.2d 949, 951[1] [2]. Beyond that, however, the precedents establish no fixed and unyielding principles; taken as stating rules of law, the cases dealing with child custody defy orderly comparison and analysis, and we will attempt none here.[1] Each case must be evaluated and resolved on its peculiar facts, rather than in terms of academic rules. With this in mind, we have set to one side certain technical considerations. It is true, as the respondent suggests, that the grandparents are actually strangers to the action, and that they have neither any right to litigate a motion to modify a decree of divorce, nor any enforceable rights in Katrina's custody by reason of their past actual custody. In re Duncan, supra, 365 S.W.2d at 570[1], 4 A.L.R.3d at 1274; Wakefield v. Thorp, 365 Mo. 415, 425, 283 S.W.2d 467, 473[13]; Schumacher v. Schumacher, Mo.App., 223 S.W.2d 841, 844–845. If one divorced parent has been awarded custody, but by consent of that parent or through the force of circumstances the child is in the actual custody of third parties, and the other parent seeks to recover custody, then the contest should be litigated in habeas corpus or by the appointment of an amicus curiae to represent the child's interest, In re Duncan, supra, 365 S.W.2d at 570–571[2] [3, 4], 4 A.L.R.3d

---

1. See, e. g., Lewis & Tockman, The Status of the Missouri Law in the Troubled Area of Child Custody, 27 Mo.L.Rev. 406, 419–453 (1962); Comment, Alternatives to "Parental Right" in Child Custody Disputes Involving Third Parties, 73 Yale L.J. 151, 152–160 (1963).

at 1274–1275, and we do not mean to rule otherwise. All the same, our Supreme Court has made it quite clear that if the parent to whom custody was originally granted is unavailable or uninterested and does not oppose the motion to modify, then the trial court should inquire, rather than rely on presumptions, if the custodial fitness of the surviving or remaining interested parent is questionable. In re Shepler, supra, 372 S.W.2d at 90–91[2]; In re Duncan, supra, 365 S.W.2d at 570–571[2] [3, 4], 4 A.L.R.3d at 1274–1275. Undoubtedly the trial court may place a child with third parties if its welfare is best served by doing so, LeClaire v. LeClaire, Mo.App., 352 S.W.2d 379, 382[4]; Testerman v. Frederich, Mo.App., 323 S.W.2d 522, 525–526[2]; McCoy v. Briegel, Mo. App., 305 S.W.2d 29, 38–39[18, 19]; Shepard v. Shepard, Mo.App., 194 S.W.2d 319, 328[12, 13], and without approving or impliedly sanctioning the intrusion of third parties in actions to modify divorce decrees, we will consider the case on its merits.

There are many factors to be considered in determining what award of custody will best serve a child's interest. We would not undertake to enumerate or assign relative importance to the considerations which are to be taken into account, although some courts and commentators have done so.[2] Though the question of child custody should not be determined solely upon technical presumptions of parental fitness, In re Shepler, supra, 372 S.W.2d at 90–92[2] [3], still our courts have always considered that a natural parent's custody best serves the child's interest unless it appears that the parent is unfit, incompetent or unable to care for the child, or unless the welfare of the child manifestly calls for a different disposition under the circumstances shown. B.S.P. v. W.W.W., Mo.App., 411 S.W.2d 834, 837 [4]; Yount v. Yount, Mo.App., 366 S.W.2d 744, 749

[9]; R——— v. E———, Mo.App., 364 S.W. 2d 821, 829[6]; I——— v. B———, Mo.App., 305 S.W.2d 713, 719[4], and cases collected marginally note 5. Further, it has been traditional experience that the interest of a very young child is best served by being in its mother's custody, provided she is able to care for the child and provided her character and conduct is such that she is a suitable custodian. R——— v. E———, supra, 364 S.W.2d at 829[6]. In this case, these considerations weigh heavily in favor of an award of custody to Mrs. Guthary.

To be sure, certain factors of the case militate against such an award. The moral fitness of the person seeking custody of a child is a proper matter for consideration, M——— v. M———, Mo.App., 313 S. W.2d 209, 212[1]; Hurley v. Hurley, Mo. App., 284 S.W.2d 72, 74[4]; 2 Nelson, Divorce and Annulment, Section 15.04, pp. 169–170, and the appellant's evidence, taken as true, indicates that Mrs. Guthary behaved most imprudently, if not downright adulterously, during her courtship with her present husband. The appellant also produced some evidence indicating that on occasion, before her divorce, Mrs. Guthary was a somewhat inattentive and self-indulgent mother. Assuming, however, that Mrs. Guthary was guilty of adultery before her present marriage, she would not be disqualified as custodian of her child unless her character and conduct was such that her child would probably be subject to substantial immoral and debasing influences in her mother's home, Yount v. Yount, supra, 366 S.W.2d at 748–749[7] [8], and no such evidence appears here. Also to be considered is the fact that Mrs. Guthary intends to take her child to Arkansas; it has often been said to be "against the policy of the law" to award custody in such a way as to place the child permanently out of the state. I——— v. B———, supra, 305 S.W.2d at 719[6]. Nevertheless, this is not an insurmountable obstacle when

2. E. g., see Nye v. Nye, 343 Ill.App. 477, 99 N.E.2d 574, 576–577 [5, 6]; Ross v. Pick, 199 Md. 341, 86 A.2d 463; 2 Nelson, Divorce and Annulment, Sections 15.01 to 15.21, pp. 165–203 (2d ed. 1945); Comment, supra, 73 Yale L.J. 151.

such an award appears to be in the child's best interest. *Good v. Good*, Mo.App., 384 S.W.2d 98, 99–100. In addition, some serious consideration must be given to the fact that Katrina is now living in the only home she has ever known, with adults to whom she is bound by strong ties of affection and basic trust. The child should be spared, if possible, the emotional trauma of sudden and final separation from this environment.

 All this discussion merely indicates the dilemma inherent in this kind of case. It serves no useful purpose to state that we feel a heavy sense of responsibility for the welfare of the child, although we do, nor to say that we have considered the whole evidence carefully, though we have. The picture presented by the whole evidence is somewhat unsatisfactory because we have no clear idea of the day-to-day environment in which the child now lives or will live if she goes with Mrs. Guthary. Taking the child from her grandparents permanently at this time involves uprooting her from the only home and parents she has ever known and, to some practical extent, placing her beyond the court's jurisdiction. On the other hand, when a contest for custody involves a choice between a natural parent and third parties, our courts have been unwilling, as we say, to discard their traditional belief that the best interest of a very young child is served by being placed in the custody of the natural parent, unless the natural parent is a wholly unsuitable custodian. Nothing in the record before us indicates that Mrs. Guthary is an unsuitable custodian of her child. In addition, many intangible factors go into a trial court's decision in a child custody case— matters which the cold record before us does not present. It has repeatedly been said that in cases of this kind the appellate court should defer to the findings of the trial court unless it is firmly convinced that the welfare of the child requires some other disposition. C_____ v. B_____, Mo.App., 358 S.W.2d 454, 461[4]; I_____ v. B_____, supra, 305 S.W.2d at 720–721[8, 9]. We cannot say that the trial court's disposition of

Katrina's custody is either in conflict with the preponderance of the evidence or an abuse of discretion. The judgment is therefore affirmed.

STONE, P. J., and TITUS, J., concur.