Lawrence Dean WARMAN, Respondent,

v.

Mr. and Mrs. Howard WARMAN,
Appellants.

No. KCD 26026.

Missouri Court of Appeals,
Kansas City District.

June 4, 1973.

James E. May, Independence, for appellants.

Thomas B. Sullivan, III, Kansas City, for respondent.

Before DIXON, C. J., and SHANGLER and SWOFFORD, JJ.

DIXON, Chief Judge.

This appeal presents issues of child custody and visitation rights in an unconventional setting. Appellants are the paternal grandparents of the 5 year old male child. Respondent is the father and was the movant in the circuit court on a motion to modify which was sustained.

For clarity, a summary of the preceding litigation will be helpful. Respondent-husband was divorced from the mother in October, 1967. He received the decree of divorce, but the mother received custody of the then eighteen-month-old boy. The mother removed the child from Missouri to Florida, and the paternal grandparents, the appellants here, and their son, respondent here, returned the child to Missouri within a matter of a few weeks after the mother's departure. In January, 1969, a motion was filed by the father seeking a modification of the original decree. In February the circuit court, acting on the motion, modified the original decree and placed custody in the paternal grandparents. The father was ordered to pay $15 per week child support. At that time, the father was "boarding" with his parents. The record discloses no difficulty in the arrangement until after the father remarried in November of 1969, and a child was born to this marriage in January, 1970. The father, six months after this remarriage, filed a motion against his parents seeking modification of the decree. This motion was heard in September, 1971, and the court modified the decree granting the father custody and terminating the support payment.

The grandparents who appeared and contested the father's motion having appealed, raising two issues. First, they assert the father failed to show a change of circumstances; and second, that the court should have granted them visitation rights.

■ The first point needs but little notice. The father has remarried, has an adequate home to house the child, and his present wife, currently a full-time housewife, is willing to undertake the care of the child. Nothing deleterious is shown as to the home situation. The grandparents are both employed, and some baby sitting is thus necessarily involved in the care of the child. There is evidence of a change of condition which is sufficient to sustain the order of the trial court. Swan v. Swan, 262 S.W.2d 312 (Mo.App.1953); Wood v. Wood, 461 S.W.2d 286 (Mo.App. 1970).

The issue respecting a denial of visitation is more difficult. Respondent has not directly countered the point raised by appellant, but has urged the application of the doctrine that *custody* of a child should be in the natural parent as opposed to third parties when there is no evidence of unfitness of the natural parents. Inferentially, respondent argues that absent unfitness of the parent, such third parties have no right even to visitation or temporary custody because they are without standing to litigate these issues.

■ Whatever may be the thrust of the respondent's contention as to the grandparents' request for visitation, the issue of their standing or status to litigate the question is a jurisdictional matter which should be noticed by the court sua sponte.

Respondents have cited Wilson v. Wilson, 260 S.W.2d 770 (Mo.App.1953), which contains a statement wholly unnecessary to the decision in the case concerning the status of third parties.

"Plaintiff named both defendant and Susie Selsor as defendants in the caption of her motion, and each filed separate answers thereto. Plaintiff was probably in error in undertaking to make Mrs. Selsor a party to the motion, because only the original parties to the divorce suit are proper parties to a motion to modify a decree of divorce, and no other person, even a grandparent, can properly litigate a modification of a divorce decree. Jack v. Jack, 295 Mo. 128, 243 S. W. 314; Hupp v. Hupp, 238 Mo.App. 964, 194 S.W.2d 215; Schumacher v. Schumacher, Mo.App., 223 S.W.2d 841. However, no objection was raised to this procedure." l. c. 772.

An examination of the cases cited in support of the quoted statement shows them not to be in point on the facts. In Hupp, supra, and in Jack, supra, there was an attempt by third parties having no standing as custodians by reason of a prior decree to actually file on their own behalf motions to modify. Schumacher, supra, differs only in that the attempted intervention was by a grandmother who claimed that right by reason of a will naming her as the guardian of the estate and person of the minor child involved. The court held in Schumacher, supra, on a motion to dismiss the appeal that, even though the intervention was properly denied, the attempted intervention by the grandmother denied by the trial court gave her standing as an "aggrieved" party to appeal that ruling.

■ Before further discussion of the Wilson case, it would be well to define certain expressions of status which appear in the cases. The term "actual custody", sometimes expressed *de facto,* is often used as the alternative to legal custody as describing the status of one who has decretal rights to custody. Obviously, one may have legal and not actual custody or one may have both. The term "actual custody", unless qualified by some expression so denoting does not exclude "legal custody" concurrent with such actual custody. The expression "de facto custody" more nearly expressing the concept of physical custody unsupported by any order or decree will be utilized hereafter to indicate that status.

In Wilson, supra, 260 S.W.2d at 772, the grandparents (Selsor) who were in *de facto* custody at the time of the divorce received an equivocal order of custody at the time the original divorce decree was entered, the court saying in its order:

"... 'the minor child born of this marriage is not to be rewarded [awarded] to either the plaintiff or defendant but shall remain in the custody of Mrs. Sussie [Susie] Selsor, the mother of defendant. ...' "

The trial court, on the motion to modify, then transferred custody to the father, the mother appealed, and the grandparents failed to appeal from the modification order which ended their equivocal status as custodians. No determination of the grandparents' standing to litigate under the

original decree was required since they failed to appear.

It seems apparent that a distinction is to be made between third parties who have *de facto* custody which is unsupported by any court order setting and defining such custody and those third parties who have custody by virtue of a court order and, thus, legal custody. In the case of *de facto* custody, the remedy of a parent seeking to regain custody from such *de facto* custodian is habeas corpus. In re Wakefield, 365 Mo. 415, 283 S.W.2d 467 (Mo. banc 1955). Where third parties have legal custody by virtue of a decree, the habeas corpus action is inappropriate and the action should be a motion to modify under the continuing jurisdiction of the trial court.

Thus, although grandparents, or other third parties have no standing to litigate either custody or visitation where they claim such standing on the basis of *actual* custody unsupported by any decretal rights (Stockton v. Guthary, 415 S.W.2d 308, 1. c. 311 (Mo.App.1967); Hupp v. Hupp, supra; Jack v. Jack, supra), trial courts nonetheless have authority to place children with third parties when the natural custodians, the parents, are unfit or unable to undertake that custody. When so *decreed,* the third parties become the *legal* custodians. Le Claire v. Le Claire, 352 S. W.2d 379 (Mo.App.1961). When such third parties have become custodians by virtue of such an order, then they are frequently placed in the position of defending the order on subsequent motions to modify filed by one or the other of the natural parents. Le Claire v. Le Claire, supra. To assert that they have no right to litigate the future status of the child would render nugatory the order granting custody.

Stockton v. Guthary, supra, does not hold that grandparents or third parties who have custody or visitation rights by *virtue of a court order* do not have stand-ing to appeal from an order modifying the custody or visitation rights decreed in their favor. The entry of a decree granting such rights to third parties creates a responsibility for the care of the child as defined in the decree. Having, by virtue or the decree, become *in loco parentis* to the child and having acquired personal rights, the action of the trial court modifying the decree adversely to such third parties "aggrieved" parties entitled to appeal. Schumacher v. Schumacher, 223 S.W.2d 841 (Mo.App.1949).

In Stockton, supra, the court, recognizing the general rule that parties other than the natural parents have no standing to intervene and litigate at the trial level upon a motion to modify filed by one of the natural parents expressly withheld approval of such third parties intruding on their own behalf in modification actions. Such a statement is not inconsistent with the view expressed here that when the *trial court has made such third persons parties* by a decree of custody, they may then have standing to contest future modifications.

The trial court decree being reviewed in Stockton had in fact granted "custody" to the paternal grandparents for two separate weeks in each year until the child reached school age and for one month of each summer thereafter. That decree was affirmed. Thus, the Springfield court recognized that the principle of child placement with third parties when it best served the child's welfare is within the power of the trial court and comprehends as well the right of visitation or temporary custody to grandparents.

The rationale of the court's approval of the trial court action is found in the following language:

"In addition, some serious consideration must be given to the fact that Katrina is now living in the only home she has ever known, with adults to whom she is bound by strong ties of affection and basic trust. The child should be spared, if possible, the emotional *trauma of sudden*

and *final separation from this environment.*" (Emphasis added.) Stockton, supra, 415 S.W.2d 308, 1. c. 313.

Finding then that the child's best interests were served by such visitation or temporary custody, the court affirmed the decree.

■ The situation in the instant case is strikingly similar. The real home of this child has been with the grandparents, appellants here, for almost all of his life. Considering the welfare of the child a normal visitation with those upon whom the child has depended for so long is not only proper, but perhaps in the long run necessary. There is some indication of a dispute over such visitation and if the parties here cannot subordinate their personal antagonisms to the best interest of the child's welfare, that is a matter for the trial court to consider on a future modification. The trial court order is modified so as to permit reasonable visitation with the grandparents and as so modified is affirmed.

All concur.