R_____, Petitioner-Respondent,

v.

D_____, Respondent-Appellant.

No. 13114.

Missouri Court of Appeals,
Southern District,
Division Two.

March 12, 1984.

Vernie R. Crandall, Crandall, Crawford & Crandall, Carthage, for respondent-appellant.

Thomas L. Williams, Roberts, Fleischaker & Scott, Joplin, for petitioner-respondent.

HOGAN, Judge.

This appeal is taken from that part of a decree of dissolution awarding principal custody of the parties' minor child to his mother. The child, whose custody is the subject of this appeal, is a male now six (6) years of age. R_____ is the mother; D_____ is the father; they shall be referred to as such.

The parties were married March 4, 1977. Shortly thereafter, the father joined the Marine Corps. While they were living on a military post in California, the child was born. After the child was born the father was posted to Okinawa. The mother moved back to Missouri. Both parties and their parents are residents of Jasper County.

The mother and her child stayed in Missouri about a month. They then moved to Galena, Kansas, where the mother took up residence in a trailer. She admitted promiscuity of a very indiscriminate order while she lived in Kansas. One of her paramours was a carnival worker, who moved in the trailer and cohabited with the mother for about two weeks. This man left because he had a pregnant girl friend to whom he wished to return.

The mother then returned to Carthage. Another man, whom we shall call Jack "moved in" with the mother. Thereafter and up to the time of trial, the mother and Jack cohabited in open adultery. They have become the parents of a male child. In July 1981, the father terminated his allotment to the mother. Since that time, the mother and her paramour have subsisted on an A.D.C. allowance of $209 per month and Jack's National Guard pay of $96 per month. Neither the mother nor Jack had been employed since 1981 at the time the case was tried in November 1982. The father had evidence of coarse and possibly indecent behavior on the mother's part, which the trial court was free to accept or reject. The other evidence stands admitted by the mother of the child.

In many respects, the father's situation was not much better. He had, at some time, received treatment for alcohol abuse. Before he was discharged from the Marine Corps, military physicians discovered that he had a "malignant tumor ... between [his] lung and [his] heart." The growth was surgically removed, and was said to be "in remission" although at trial time, the father was receiving a check-up every six weeks for signs of renewed growth of the malignant tumor. The father was unemployed, but received a temporary service-connected disability allowance in the amount of $1,337 per month.

The father lived with his parents in a three-bedroom trailer; however, the father's parents were in the process of building a new house which they expected to occupy with the father. The paternal grandfather owns a "marine store." The paternal grandparents both testified that the child would be welcome in their home. The father has had "visitation" privileges with his child, and believes he would be able to care for him. What we have recited is by no means all the evidence produced at the trial; it is sufficient to show the nature of the case.

■ By any standard, resolution of the merits of the appeal is difficult. The scope of our review is limited by the rules laid down in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). We are authorized to set aside a judgment in a bench-trial case on the ground that it is against the weight of the evidence only when the record generates a firm belief that the decree or judgment is wrong. This is, nevertheless, such a case.

■ As to the choice between parents, this court has for many years been of the opinion that the interest of a very young child is best served by being in its mother's custody, provided she is able to care for the child and provided her character and conduct is such that she is a suitable custodian of her child. *Stockton v. Guthary*, 415

S.W.2d 308, 312 (Mo.App.1967); R_____ v. E_____, 364 S.W.2d 821, 829[6] (Mo.App. 1963). This court has also realized that a sex life of some order is a necessity which is a part of everyday life, particularly in the everyday life of young adults. Therefore the court has usually been unwilling to hold that occasional acts of adultery disqualify a mother as a custodian unless her character and conduct is such that her child would probably be subject to substantial immoral and debasing influences in the mother's home. *Stockton*, supra, 415 S.W.2d at 312; *Yount v. Yount*, 366 S.W.2d 744, 749[8] (Mo.App.1963).

Even so, we have the firm belief that principal custody should not have been awarded to the mother. The child whose custody is in issue is now ready to begin his elementary schooling. He will now begin to learn to associate with and accommodate the mutual rights and privileges of his peers and will acquire some notion of those qualities known as the elementary virtues, including industry as opposed to indolence, honesty or at least reasonable candor as opposed to duplicity and prudent restraint as opposed to unlimited self-indulgences. And, as this court has time and again emphasized, he will stand foremost in need of the precept imparted by a stable, orderly home in which accepted conventions and mores are at least given some countenance. *Rogers v. Rogers*, 430 S.W.2d 305, 311[9] (Mo.App.1968); H_____ v. D_____, 373 S.W.2d 646, 654[7] (Mo.App.1963).

Quite aside from her indiscriminate satisfaction of her sexual impulses, this mother has demonstrated remarkable irresponsibility and indolence, even given today's relaxed standards of morality and industry, and giving full weight to the fact that she was a very young adult when she began to bear children. She was perfectly content to relax with one or another paramour and to subsist on her husband's allotment, for the most part, even when she could have sought gainful employment or acquired some marketable skill. Moreover, she has been most indiscriminate in her choice of male companions and there is considerable evidence that she parades her petty vices in full view, as it were, of God and the world. This is not to say the mother is a bad woman; the inference is irresistible that she has been an irresponsible parent.

There are, of course, considerations which mitigate against an award of principal custody to the father. He is a sick man, perhaps terminally so. He was able, at trial time, to be of some assistance at the "marine shop" but this court need not be told that malignant neoplastic disease is quite often chronic and terminal. However, the father has had experience in looking after the child and believes he will be able to attend to his son's needs and wants.

We also realize that confiding principal custody of the child is probably in effect an award to the grandparents; we are in no doubt of our authority, even in the absence of statute, to place the child with a third party, *Stockton*, 415 S.W.2d at 312, but the impaired faculties of grandparents, either present or to come, has caused this court to hesitate to award custody to grandparents or to make awards of custody which are in effect such. R_____ v. E_____, supra, 364 S.W.2d at 829. All the same if the child is to be reared in a stable environment, his only realistic chance, for the present, must be provided by awarding principal custody to the father.

For the reasons stated, we believe that the award of principal custody to the child's mother must be reversed. Therefore that part of the decree dated December 23, 1982, pertaining to child custody and child support is reversed, and the clerk of the circuit court of Jasper County is directed to modify the decree in Cause No. CV281–48DR as ordered in the mandate hereto attached. In all other respects, the decree is affirmed.

MAUS, P.J., and PREWITT, J., concur.