STATE of Missouri, ex rel. S.O. and F.R., Petitioner-Respondent,

v.

S.O., Respondent-Appellant.

No. 51125.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 30, 1986.

Motion for Rehearing and/or Transfer Denied Feb. 11, 1987.

---

Nancy Schmidt, St. Louis, for respondent-appellant.

Helton Reed, Jr., St. Louis, for petitioner-respondent.

STEPHAN, Judge.

F.R. petitioned the trial court for an order that would declare him to be the natural father and principal custodian of S.O., a female child born out-of-wedlock to E.O. on May 21, 1977. S.O.'s maternal grandmother, S.O.,[1] answered the petition, denying F.R. was the child's father. Asserting she had had de facto custody of the child since E.O.'s death on July 1, 1983, she cross-petitioned, asking the court to award custody

---

1. The child, who is the subject of this proceeding, has the same initials as the grandmother-appellant.

of S.O. to her. The issues of paternity and custody were tried to the court separately. F.R. prevailed on each. Grandmother appeals. We reverse.

I

In her first point, appellant asserts no substantial evidence supports the determination that F.R. is the child's natural father. We agree.

At trial F.R. testified he met E.O. in March 1975 and had sexual intercourse with her "maybe about twenty times" during the two years that followed. When asked whether E.O. had "at any time" during that two year period told him she was pregnant with his child, F.R. responded she had. He testified that because he had a key to E.O.'s apartment and never found her there with anyone else, he believed she was having sexual relations only with him. He stated E.O. gave birth to the child on May 21, 1977 and at that time declared to him, "I had your daughter; a daughter this time; I really wanted a son." He offered nothing more on the issue of paternity.

The petitioner in an action to establish the paternity of a child born out-of-wedlock must prove the child's paternity by a preponderance of the evidence. *N.R. v. A.D.*, 691 S.W.2d 350, 352 (Mo.App.1985). The nature of the proof he or she is required to produce is, of course, dictated to a certain extent by the circumstances of the case. When paternity is disputed, however, the petitioner must ordinarily produce evidence from which a trier of fact could reasonably, and without resort to speculation, conclude that at or near the time the child was conceived the mother engaged in sexual intercourse with the putative father, and no one but the putative father. When it is the putative father who must produce this evidence, the burden can be onerous. The primary concern in a paternity proceeding, however, is the child's welfare. To advance this concern, paternity must be established with the greatest care.

Though F.R. asserts E.O. did not engage in sexual relations with anyone but him during the period when the child must necessarily have been conceived, our review of the record convinces us his confidence in E.O.'s fidelity is at least as likely based on wishful thinking as it is on fact. The record indicates, for example, that F.R. was married to, and living with, another woman while he was seeing E.O. It further indicates that sometime in 1976, and more than nine months after she had begun seeing F.R., E.O. gave birth to L.O., half-sister of the child involved here. The record suggests, though it does not establish, that L.O. was fathered by R.L. It is undisputed that L.O. was not fathered by F.R. Apart from testimony that S.O. was born on May 21, 1977, and that F.R. had sexual relations with her mother "(a)pproximately, maybe about twenty times" in the two years that preceded, the record is devoid of evidence concerning the possible period of conception and the frequency of F.R.'s contact with E.O., sexual or otherwise, during that time. T.O., E.O.'s sister, testified, on the other hand, that E.O. was seeing R.L. "about the time she got pregnant with" the child involved here. Moreover, the grandmother and E.O.'s sisters, T.O. and G.S.J., testified E.O. told them R.L. was the child's father.

In court-tried cases, we review the evidence "as in suits of an equitable nature." Rule 73.01; *S–J–B– v. S–F–S–*, 504 S.W.2d 233, 234 (Mo.App.1973). We are, of course, bound by the guidelines of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) and "exercise our power to set aside the judgment only with caution and a firm belief that the judgment is wrong." *N.R. v. A.D.*, 691 S.W.2d 350, 352 (Mo.App.1985). Applying this standard of review, we find the evidence raises, but fails to answer, the question whether E.O. had sexual relations with anyone other than F.R. at or near the time this child was conceived. We defer, of course, to the trial court's assessment of F.R.'s credibility, and assume F.R. genuinely believes he is the child's natural father. Rule 73.01(c)(2). Mere belief, regardless of how fervently held, however, is not, in our opinion, sufficient reason to burden the child with one who is not in fact her natural father. It should go without saying, the

belief may be genuine and nevertheless incorrect.

On the record before us we cannot fairly conclude E.O. had sexual relations only with F.R. at or near the time the child was conceived. F.R. offered no scientific evidence to bolster his claim of paternity. Accordingly, we hold that the trial court's implicit finding that F.R. established his paternity by a preponderance of the evidence, *N.R. v. A.D.*, supra, constituted error, even when tested by the stringent standards of *Murphy v. Carron*, supra. The trial court's order, insofar as it declares F.R. to be the child's natural father, is therefore reversed.

## II.

Even if F.R.'s evidence had warranted a finding that he was the child's natural father, the issue of custody would not necessarily have been resolved in his favor. See *In the Interest of J.L.H.*, 647 S.W.2d 852 (Mo.App.1983). A blood relative is given preference over a stranger in child custody matters only when all other facts are taken into consideration. *Id.* at 859–860. Furthermore, as pointed out above F.R. did not establish that he is the child's father by a preponderance of the evidence, whereas it is unquestioned that appellant is the child's maternal grandmother.

In this state the best interests of the child dictate the outcome of a custody dispute. *Frederick v. Frederick*, 617 S.W.2d 629, 637 (Mo.App.1981). Though the paternity of this child remains a matter for speculation, the other facts pertinent to the issue of her best interests are undisputed: On July 1, 1983, E.O. and her youngest daughter perished in an automobile accident. E.O. was survived by three children, R.O, L.O., and S.O., all of whom are illegitimate. The children are half-siblings and were ten, nine, and eight years old, respectively, at the time of trial. They have always lived together and have lived with the maternal grandmother, since their mother's death. The uncontradicted testimony from two psychologists who interviewed the grandmother, the child involved here, and the two half-siblings was that appellant's home is "very neat and very clean", the relationship between appellant and the child involved here is "very warm", and that the grandmother and the three children are a "close-knit family." The relationship among the children is the "closest interpersonal bond" in the children's lives.

Though F.R. believed himself to be S.O.'s natural father, he made no attempt to claim her as his daughter until after E.O.'s death. F.R. lives with his ex-wife. He and his wife were divorced in 1977, shortly after the child involved here was born. In March 1985, roughly four months before he initiated this proceeding, F.R. petitioned the circuit court for an ex parte order of protection, naming his ex-wife as respondent. The petition alleged, "I [F.R.] wake up in late hours of night finding my wife standing over me with a knife when I am in bed. My children are unruleable. They jump on me and hit me in head with bottles. They might be trying to kill me." In January 1985, the ex-wife had filed a similar petition, naming F.R. as respondent, alleging he had pulled a gun on her and their children, who ranged in age from eighteen to twenty-one.

In our view, F.R. has nothing more than his self-proclaimed paternity to recommend him as a custodian for the child. The environment he offers is plainly licentious, potentially violent, but, even more significantly, wanting in the security the child derives from her relationship with her grandmother and half-siblings. Separating the child from the "family" she has known since infancy and placing her in the environment offered by F.R. is contrary to her best interests. That part of the trial court's order which awards custody to F.R. is therefore reversed.

The judgment is reversed, and the cause is remanded to the trial court to enter an order vesting custody of the minor child, S.O., in the appellant.

GARY M. GAERTNER, P.J., and SIMON, J., concur.