**Robert James McCUBBINS,
Respondent,**

v.

**George Ray DAWSON and Mary Ann
Dawson, Appellants.**

**No. WD 38892.**

Missouri Court of Appeals,
Western District.

Nov. 17, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 29, 1987.

Application to Transfer Denied
Feb. 17, 1988.

Thomas W. Koelling, Kansas City, for appellants.

Janet Davis Baker, Edwin M. Soltz, Kansas City, for respondent.

Before KENNEDY, C.J., and PRITCHARD and LOWENSTEIN, JJ.

KENNEDY, Chief Judge.

This is an appeal by the grandparents of Anthony Ray Dawson, George Ray Dawson and Mary Ann Dawson, from a trial court judgment based upon a jury verdict finding Robert James McCubbins, Jr., to be Anthony Ray's father, and ordering the transfer of his custody from the grandparents to self-alleged father. A judgment for $3,878.18 upon grandparents' counterclaim against putative father for necessaries furnished to child is unchallenged by either party.

The facts will appear in connection with the discussion of the points on appeal.

1. *The sufficiency of the evidence to support the verdict of paternity.*

The grandparents challenge the sufficiency of the evidence to support the verdict of McCubbins' paternity. We take the evidence which tends to support the verdict and exclude that which is unfavorable thereto. *State v. Lee,* 708 S.W.2d 229, 232 (Mo.App.1986); *State v. Scott,* 699 S.W.2d 760, 765 (Mo App.1985).

The evidence showed the following facts and circumstances:

Anna Marie was unmarried and lived with her parents (defendants herein) when Anthony Ray was born on November 20, 1983. She and the child continued to live with her parents until he was eight months old, when Anna Marie married William Platt and they established a separate household. All are in agreement that Platt is not Anthony Ray's father. In 1986 Anna Marie and Platt separated and Anna Marie and Anthony Ray moved back to her parents' home. One-and-a-half or two months later, on April 30, 1986, when Anthony Ray was two-and-a-half years old, Anna Marie died in an automobile accident. Anthony Ray continued to live with his grandparents and was living with them at the time of the trial.

Anna Marie had been 16 or 17 years old when she became pregnant. McCubbins was 17 or 18 years of age. He had dated Anna Marie and had had sexual relations with her over a three or four-month period ending with their breakup in late April or early May, 1983. At mid-March she had called McCubbins and had told him she was pregnant and that he was the father. The breakup of their relationship followed.

McCubbins after Anthony Ray's birth offered Anna Marie money and offered to buy articles needed for the baby, but Anna Marie would not accept. After she met Platt and before they were married, Anna Marie told Platt that McCubbins was the father of the child. She also told others that McCubbins was the father.

After Anna Marie's death, McCubbins established contact with Anthony Ray and visited him often, at first with the full cooperation of the grandparents. McCubbins on one occasion undertook to keep Anthony Ray, and the police intervened to return him to the grandparents. Shortly thereafter the grandparents sought to get McCubbins to sign a consent to their adoption of Anthony Ray, but McCubbins declined. McCubbins then instituted the present lawsuit. Anthony Ray was three years old at trial time.

The foregoing evidence is amply sufficient to support a verdict of paternity.

▇ Grandparents interpret *State ex rel. S.O. v. S.O.*, 725 S.W.2d 601 (Mo.App. 1986), to say that the proponent of paternity must prove as an element of his case that mother did not have sexual relations with any other person than the putative father during the period when she might have conceived. We think they have misread the case. While having had or not having had sexual relations with any other person than the putative father during the time of possible conception is a powerful bit of evidence on one side or the other of the issue, still it is not essential in every case. The point is that the proponent of paternity must prove by a preponderance of the evidence that the putative father was the actual father, and whether that burden is met by the proponent is for the trier of fact to say. *N.R. v. A.D.*, 691 S.W.2d 350 (Mo.App.1985); *David v. Cindy*, 565 S.W.2d 803 (Mo.App.1978).

▇ Anna Marie had dates with other men during the possible period of conception, but the evidence leaves to speculation whether she had sexual relations with anyone else than McCubbins during that time. There was testimony by her brother, offered by the grandparents, that she had sexual relations with one man on the preceding New Year's Eve, but that does not prove (even if believed) that she had intercourse with the others. The grandparents also point to testimony of Anna Marie's statements that another person than McCubbins was Anthony Ray's father. The evidence was for the jury to evaluate.

2. *Challenge for cause of venireman Holden.*

▇ The grandparents seek a new trial on the paternity issue for alleged trial court error in overruling their challenge for cause to venireman Holden. Holden along with several other panel members was impressed with the plaintiff's pressing his claim of paternity. Said Holden on voir dire: "I think it is an awful big responsibility to be taking on just for no reason, unless he was the true father ... At this point I don't understand why somebody would want to do that unless he was." Later, Holden was asked whether he could sit "as a fair and impartial juror and put aside those preconceived notions". Holden answered in the affirmative.

The trial court in denying the challenge for cause did not abuse the discretion accorded to him in this matter. *See State v. Treadway*, 558 S.W.2d 646, 649 (Mo. banc 1977), *cert. denied*, 439 U.S. 839, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978). The juror was making an observation, and a perfectly reasonable and sensible one, which he said he could lay aside and could consider the evidence fairly. Nothing more could be expected of him. His observation was not an opinion, even a tentative one, which would have to be dislodged by evidence.

The judgment establishing the paternity of McCubbins is affirmed.

3. *Transfer of custody without evidentiary hearing.*

▇ Next, the grandparents complain of the court's order, made without an evidentiary hearing, which transferred the custody of Anthony Ray from his grandparents to McCubbins. The judge believed that he had "no authority or jurisdiction ... to hear the issue of custody." "Once the petitioner has been found to be the lawful father of the minor child," he said, "there was nothing more that this court could do with regard to custody". The grandparents claim that the trial court should have conducted an evidentiary hearing to determine the fitness of the father to have custody of the child. In this contention the grandparents are correct, and it is necessary to remand the case to the trial hearing for an evidentiary hearing as a basis for the custody determination.

▇ McCubbins says that the grandparents do not have "standing", and cannot complain about the lack of a hearing on the custody issue because they are not "aggrieved parties". However, it was the father who made the grandparents parties, by bringing suit against them, and he will not be heard to say now that they are not proper parties to the case. *See* 31 C.J.S. *Estoppel*, Sec. 118 (1964); *Humphrey v. Humphrey*, 639 S.W.2d 269 (Mo.App.1982); *Frederick v. Frederick*, 617 S.W.2d 629

(Mo.App.1981). The custody count of plaintiff father's petition is essentially an application for a writ of habeas corpus to obtain the transfer of custody from a third person who has actual physical custody. *In re Duncan,* 365 S.W.2d 567 (Mo. banc 1963), clearly holds that such a third person may challenge the custody claim of the petitioning natural parent on the ground of his unfitness for custody. In that case the St. Louis Court of Appeals in a habeas corpus proceeding instituted by the father had ordered the custody of children delivered by the maternal grandparents to the father without any evidentiary hearing. The father claimed custody by virtue of an uncontested default divorce decree. There the children had been left by the father (and perhaps by the mother) with the maternal grandparents who had kept them for some years. The mother had in the meantime disappeared. There was no one with sufficient interest—using that term in its non-technical sense—to seek modification of the custody provision of the divorce decree. The Supreme Court remanded the case for an evidentiary hearing "not for the benefit of the adult parties seeking custody, but for the welfare and best interests of the children involved". The court emphasized the absence and unavailability of the mother, with no interest in their custody, and emphasized also that the father's claim to custody (as against the mother) was a default divorce decree which had not been based upon evidence at an adversarial hearing.

In the case before us we have a mother who is deceased; the grandparents with physical custody of the child; and a father claiming custody of the child who has never had custody of him. As Judge Hyde said in *In re Duncan, supra* at 570, "where the whole future of the lives of children is at stake, the matter is too important to be decided solely on a legalistic presumption of fitness ..." *See also In re Shepler,* 372 S.W.2d 87, 90–91 (Mo. banc 1963); *State ex rel. S.O.. supra; In re Neusche,* 398 S.W.2d 453, 457 (Mo.App. 1965).

■ Upon remand the court will conduct an evidentiary hearing upon the issue of custody. Upon such hearing, the welfare of the child is presumed to be best served by its natural parents' custody, and it is the grandparents' burden to prove the contrary. *See M.P.M. v. Williams,* 611 S.W.2d 274, 277 (Mo.App.1980).

Judgment of paternity affirmed. Judgment transferring custody to plaintiff is reversed and cause remanded for evidentiary hearing in accordance with foregoing opinion.

All concur.