Elmer TOMLINSON and Ruth Tomlinson, his wife, Petitioners-Respondents,

v.

Bonny O'BRIANT, Respondent-Appellant.

Nos. 12015, 12396.

Missouri Court of Appeals, Southern District, Division Three.

May 6, 1982.

Motion for Rehearing or Transfer Denied May 26, 1982.

Application to Transfer Denied July 12, 1982.

King E. Sidwell, Blanton, Rice, Sickal, Gilmore & Sidwell, Sikeston, for respondent-appellant.

Michael B. Hazel, Caruthersville, for petitioners-respondents.

HOGAN, Judge.

In this adoption case, the petitioners, to whom we shall refer as the plaintiffs, sought to adopt the children of their deceased son Thomas. Separated from his second wife, Thomas and his children were living with the plaintiffs at the time of Thomas' death on February 13, 1980. On March 7, 1980, plaintiffs filed a two-count petition in the juvenile division of the Circuit Court of Pemiscot County. In Count One, plaintiffs averred: 1) that they were husband and wife, residents of Pemiscot County; 2) that they desired to adopt E, a female child 10 years of age, and M, a male child 8 years old, and that both children were residing with them; 3) that their son died February 13, 1980, and they were the children's paternal grandparents; 4) that respondent, whom we shall call the defendant, had willfully abandoned and willfully neglected to provide the children with maintenance for at least 1 year next preceding the filing of the petition; 5) that transfer of custody of the children and their subsequent adoption would be in the children's best interest. In Count Two, plaintiffs incorporated and realleged the averments of Count One, adding that they de-

sired to adopt the children and praying entry of a decree of adoption 9 months after entry of an order transferring custody. Defendant was served and filed a responsive pleading. The trial court held two hearings. On August 22, 1980, the court heard evidence on the petition for custody and awarded custody to the plaintiffs. On July 7, 1981, it heard further testimony and entered a decree of adoption. Defendant appeals from both orders.

In appeal number 12015, defendant argues that the trial court was without jurisdiction to award plaintiffs the custody of the children. The thrust of her first point is that in the circumstances of this case, the court should have required the plaintiffs to proceed under the Termination of Parental Rights Act, now codified as §§ 211.442–211.492, RSMo 1978,[1] rather than permitting them to proceed under the provisions of § 453.010. Defendant concedes the order of August 22, 1980, was not an appealable order. *Marsch v. Williams*, 575 S.W.2d 897, 898[3] (Mo.App.1978).

■ The difficulty with this point is that the objection made here was not presented in the trial court. In her responsive pleading, defendant averred that the trial court was without jurisdiction and the question of the trial court's jurisdiction of the subject matter is properly preserved for review. Rule 55.27(a); *Greenwood v. Schnake*, 396 S.W.2d 723, 726 (Mo.1965). Nevertheless an appellant is not entitled to alter or broaden the scope of his objection on appeal, *Cowden v. Sun Oil Co. of Pennsylvania*, 583 S.W.2d 547, 549[5] (Mo.App. 1979), and the first point is not properly before this court.

The second point advanced is that the trial court lacked jurisdiction of the subject matter because the Termination of Parental Rights Act provided plaintiffs an exclusive remedy by which to obtain custody of the children. Defendant asserts that the provisions of § 211.442 are repugnant to the provisions of § 453.040 and § 211.442 must

be considered controlling. We decline to pursue this argument at length. Legislative concern for the integrity of the family unit and the welfare of minor children has resulted in the enactment of a welter of "dependency" or "termination" statutes, some of which have proved unsatisfactory. See Note, 68 Geo.L.J. 213, 230–240 (1979). The literature immediately available to us indicates that "termination" statutes were originally intended only to provide an additional procedure by which parental rights might be terminated to protect the children or to foreclose the validity of parental consent before a petition for adoption is filed. See 9A U.L.A. § 47 and Commissioner's Note thereto.

■ However that may be, it is clear from the precedents that in this case, the juvenile division of the Circuit Court of Pemiscot County had jurisdiction of the adoption. When defendant and the children's father were divorced, defendant was awarded custody of the children. However, the decree was modified in 1973 and principal custody was awarded to the father. At the time of the father's death, the defendant had not fully exercised her right to part-time custody and visitation for some time. When the father died in 1980, the continuing jurisdiction of the divorce court abated. *In re Wakefield*, 365 Mo. 415, 422, 283 S.W.2d 467, 471[2] (banc 1955); *Schumacher v. Schumacher*, 223 S.W.2d 841, 845 (Mo.App.1949). No court of competent jurisdiction was obliged to defer, in 1980, to whatever presumption of fitness was created by a decree rendered in 1972. See: *In re Duncan*, 365 S.W.2d 567, 570–571[2][3, 4], 4 A.L.R.3d 1270, 1274–1275 (Mo.banc 1963); *McCoy v. Briegel*, 305 S.W.2d 29 (Mo.App. 1957). When this action was commenced, both plaintiffs and the children were residents of Pemiscot County; the plain terms of § 453.010 conferred authority to hear the adoption proceeding upon the juvenile division of the circuit court of that county, and the decree is not void for want of jurisdic-

---

1. References to statutes and rules are to RSMo 1978 and Missouri Rules of Court (11th ed. 1980), except where otherwise noted.

tion of the subject matter. *State ex rel. Catholic Charities of St. Louis v. Hoester,* 494 S.W.2d 70, 73[3] (Mo.banc 1973); *State ex rel. Grimstead v. Mueller,* 361 Mo. 92, 96–97, 233 S.W.2d 700, 701–702 (banc 1950); *In re Adoption of K.,* 417 S.W.2d 702, 707–708[5] (Mo.App.1967).

■ Appeal number 12396 is defendant's appeal on the merits. Preliminarily, we note and set two matters aside because they are not dispositive of the appeal on its merits. Upon trial it was shown that the defendant has been married five times. This suggests that her domestic situation has been unsettled, but there is nothing in the record to indicate the defendant has been guilty of any immoral conduct which would make her an unfit custodian of her children, nor to suggest that the children would be subject to any debasing or immoral influence in her home. The plaintiffs were 60 years of age. The children were 10 and 8. If the children were placed with the plaintiffs, plaintiffs would be nearly 70 years of age at the time the children reached maturity. Usually, children should be cared for by individuals who are of such age as those who normally bear children, but advanced age does not, of itself, disqualify a prospective adopting parent. *In re Adoption of K.,* supra, 417 S.W.2d at 711–712[16, 17]. The record indicates both the plaintiffs and the defendant and her present husband are financially able to care for the children. The trial court was not presented with a contest between a fit custodian and an unfit custodian.

■ The decisive question is whether the evidence established that the defendant abandoned her children within the meaning of § 453.040(4). "Abandonment" within the intent of § 453.040(4) is a voluntary and intentional relinquishment of custody of the child to another with the intent to never again claim the rights or perform the duties of a parent. *In the Matter of K. M. B.,* 544 S.W.2d 590, 592[4] (Mo.App.1976); *In re Adoption of J——,* 396 S.W.2d 257, 261[3, 4] (Mo.App.1965); *In re Adoption of J. M. K.,* 363 S.W.2d 67, 72–73 (Mo.App.1962). It is true that § 453.040(4) states alternative

grounds for dispensing with parental consent, *In re Adoption of J——,* supra, 396 S.W.2d at 261, but in this case we are not concerned with "willful neglect to provide" for the children. From 1973 to 1980, the children were in their father's custody. The record shows beyond cavil that during that period, the father was both legally and morally bound to support the children, and there is no evidence they were ever in want. So, to reiterate, our question is whether the evidence supports a finding that the defendant abandoned her children. We approach the question bearing in mind that adoption statutes must be strictly construed in favor of the natural parent. *Adoption of R. A. B. v. R. A. B.,* 562 S.W.2d 356, 360–361[5] (Mo.banc 1978).

The defendant married the children's father in 1970. By our calculation, she was then 19 years old. She and her first husband became parents of two children before they were divorced in 1972. The divorce court awarded custody of the children to the defendant. The children's father was ordered to pay the sum of $100 per month as child support. Defendant testified the father made only one support payment.

At the time of the divorce, defendant and the children's father lived in St. Louis County. Shortly after she was divorced, defendant moved to California. She kept the children with her. Seventeen months after the divorce, defendant found herself unable to support herself and her children. Her "job skills" were not sufficient for her to find employment sufficiently remunerative to care for the children "without receiving help from the welfare department and/or [sic] their father." The father asked defendant to return the children to him. He "had ... more" than the defendant, was about to marry another woman, and "they and his two parents could care for [the children] twice as well as [defendant] could by herself."

Defendant was reluctant to surrender custody of the children, but decided that her former husband was in a better financial position than she was and "did feel that he loved the children and ... would [prop-

erly] care for them." The father filed a motion to modify the divorce decree in 1973. Defendant did not appear in person and did not have counsel. The motion was disposed of by stipulation, apparently tendered by the father through an attorney. The stipulation provided that the father should have principal custody, but defendant was to have custody for "two weeks" in the summer, and "at Christmas time" if the winter custody did not interfere with the children's schooling. Paragraph 4 of the stipulation provided that "In the event [the father] should die, become unable, or desire to relinquish his custody of the minor children, then the custody of the minor children shall revert back to the [defendant]." Without specifically mentioning the stipulation, the divorce court approved the entry of a modified decree which was finally rendered on February 8, 1974.

Thereafter, the defendant "saw" her children in April 1974 for approximately a week. She had custody of the children again in March 1975 for approximately two weeks. Defendant moved to Alaska on July 4, 1975. During 1976, defendant did not exercise her parental rights but she testified that she made arrangements with the children's father to have custody of the children in February 1977. Defendant further testified she had a serious automobile accident in February 1977. Both her legs were broken and she was unable to walk for approximately a year and a half. The defendant further testified that in 1979, she "made arrangements" with the children's father to have custody of the children "[during] the entire summer [of 1980]."

The record contains conflicting, and over-emphasized, evidence concerning the degree of attention defendant gave her children while they were in their father's custody. The plaintiffs' evidence was that defendant wrote infrequently, rarely sent presents to her children and in general demonstrated little interest in their welfare. On the other hand, defendant produced letters from her children and from her husband's second wife which indicate that the defendant maintained a cordial relationship with her children while they were in their father's custody.

Upon defendant's motion and pursuant to § 453.070.1, the trial court ordered an Alaskan home study. The probative force of this document is problematic, but it was considered and it does tend to corroborate the defendant's testimony. The investigator corroborated defendant's testimony concerning her serious accident in 1977; found that defendant had a good work record since she moved to Alaska; found the defendant had no record of alcoholism, drug abuse or arrest in Alaska, and concluded that defendant and her present husband were financially capable of caring for the children. The report contains no negative observation.

Plaintiffs' evidence was not very enlightening. Mr. Tomlinson testified that he lived at Bragg City in Pemiscot County; he had lived there for 42 years. He and his wife had reared eight children, all of whom were "grown and gone." He was 60 years of age. His son, the children's father, had been living with him at the time of the son's death. Prior to his death, the children's father had been living with his parents "about a month[, but] [t]hey'd been there off and on . . . for a year or so a week or two at a time." Mr. Tomlinson testified it was his desire to adopt and rear the children and that he understood the consequences of adoption. His knowledge of defendant's relationship with her children and with his son was fragmentary.

Mrs. Tomlinson's testimony was not much more substantial. She did testify that the defendant had called her only once on the telephone and had sent her children only one gift, but her knowledge was limited to the time her son and his family were living with her.

■ We are acutely aware of the restricted scope of our review in bench-tried cases. Nevertheless, our examination of the record convinces us that the trial court misapplied the law and leaves us with a firm belief that the judgment is wrong. Although we have not and shall not attempt to compare proceedings to terminate

parental rights with adoption proceedings, it is obvious that the plaintiffs bore the burden to prove one of the conditions dispensing with parental consent to adoption. *Adoption of R. A. B. v. R. A. B.*, supra, 562 S.W.2d at 360–361[5]. The Adoption Code reflects the courts' "anxiety to protect the rights of natural parents . . . ." *In re Maymik*, 292 S.W.2d 562, 568–569[3] (Mo.1956).

This is not a case in which a mother delivered her child into the custody of other individual persons or to an agency for adoption. The defendant's testimony was that she surrendered her children to their father because she was financially unable to care for them. Moreover, the circumstances in which the defendant relinquished custody of the children negate a settled purpose to forego her parental duties. At the time the decree of divorce was modified in 1973, defendant was without counsel and was still without remunerative employment. We know that agreements or stipulations concerning the custody of children are generally not binding upon a divorce court, *Johns v. McNabb*, 247 S.W.2d 640, 643[5] (Mo.1952); *Turpin v. Turpin*, 570 S.W.2d 831, 833–834[1] (Mo.App.1978), but where, as here, the natural parent has attempted to provide for a resumption of custody upon a particular contingency and the very event provided for occurs, the language of the stipulation or agreement should not be construed against the parent and taken as evidence of an intent to abandon the children.

If the defendant did not fully exercise her rights of custody and visitation after 1975, it must be remembered that from and after July 4, 1975, she lived and worked in Alaska. Defendant did not know how far an airplane flew from Anchorage to the airport nearest the father's residence but she did know the trip was a 12-hour trip, allowing for a 5-hour time difference between her home and her destination. Considering the distance and expense of travel, the defendant's failure to exercise all her parental rights cannot be taken as evidence of an intent to abandon her children. See: *Logan v. Coup*, 238 Md. 253, 208 A.2d 694, 698 (1965); *In re Adoption of Porras*, 13 App.Div.2d 239, 215 N.Y.S.2d 778, 779 (1961). Further, and contrary to plaintiff's argument, defendant had and offered in evidence correspondence, particularly the letters received as defendant's exhibit 2, which shows unmistakably that if defendant had been out of touch with her children, she had reestablished affectionate contact with them by 1979.

Although it is not as important as she argues, the record clearly shows that defendant immediately sought custody of her children upon learning of her former husband's death. The record contains differing versions of defendant's request for custody, but it shows that the defendant believed she had a right to the custody of her children and she attempted to exercise it. Not only did she ask that the children be returned to her; after this action was begun, defendant filed an action for custody in the divorce court, based, apparently, on counsel's mistaken notion that that court still had jurisdiction. It has been held and we reiterate that in a bench-tried case, the trial court is the arbiter of the facts; it may believe or disbelieve oral evidence in whole or in part, and this is true even if the evidence is uncontradicted. *Marriage of Baker*, 584 S.W.2d 449, 450[2] (Mo.App. 1979). Even so, in an adoption case its judgment must be supported by some convincing facts or circumstances. Here, the evidence does not warrant a finding that defendant "abandoned" her children within the purview of § 453.040(4). What is more, we believe the trial court misconstrued the intent of that statute.

Accordingly, the decree of adoption is reversed and it is ordered that the children be delivered into the custody of the defendant.

PREWITT, P. J., and TITUS, J., concurs.