**In re the MARRIAGE OF Mark Bryan CAMPBELL and Brenda Jean Campbell.**

**Mark Bryan CAMPBELL, Petitioner-Appellant,**

v.

**Brenda Jean CAMPBELL, Respondent-Respondent.**

**Joe Cain and Hester Cain, Intervenors-Respondents.**

**No. 13498.**

Missouri Court of Appeals, Southern District, Division Two.

Jan. 30, 1985.

Ivella McWhorter Elsey, Robert M. Sweere, Springfield, for petitioner-appellant.

John S. Pratt, William A. Wear, Jr., Springfield, for respondents.

CROW, Judge.

In an action for dissolution of marriage brought by Mark Bryan Campbell ("Mark") against his wife, Brenda Jean Campbell ("Jean"), the trial court, among other orders in its decree dissolving the marriage, awarded custody of the parties' only child, Jennifer Ann Campbell ("Jennifer"), to

Jean's parents, Joe Cain and Hester Cain, who had intervened in the cause for the purpose of seeking custody. Mark was granted visitation from 6:00 p.m., Friday until 8:00 p.m., Sunday on the first and third weekends of every month, a one-month period of temporary custody during the summer, and other visitation on designated holidays. Mark's parents, who also intervened, were awarded visitation rights apart from those awarded Mark. Neither Mark nor Jean was ordered to pay child support for Jennifer to the Cains.

Mark, who vigorously sought custody of Jennifer at trial, appeals, asserting the trial court erred in awarding custody of Jennifer to the Cains. He attacks no other provision of the decree. Jean did not appeal,[1] nor did Mark's parents.

Though no party requested it, the esteemed and conscientious trial judge[2] prepared findings of fact and conclusions of law, weighing and analyzing the extensive testimony—lay and expert—presented during the three-day trial. Included in the findings was a determination that Mark "is an unfit person at this time to have the custody of the child." Commenting on the issue of Mark's fitness, the trial court stated:

"We do not accuse the father of adultery, but his conduct with Brenda Watson[3] has the same effect on the child as if the sex act were being done with the child present. There are several instances in Missouri where a mother may have a relationship outside the marriage, but in the instance where the child is not there and knows nothing about it, it does not necessarily mean that she would not be a good mother. As we perceive it, the damage is in having a child present under living situations which would appear to be improper. In this case, it did not happen just one time but over a period of time."

Mark's first assignment of error asserts the trial court "improperly applied the law relating to parental rights in that the trial court found appellant's living situation with his fiancee equivelant [sic] to having sex in the presence of his child which finding, if accepted, does not clearly show appellant to be an unfit parent and which does not render him wholly unsuitable for custody."

In considering this complaint, we note that even though the decree was entered September 22, 1983, six days before the effective date of § 452.375, Laws 1983, p. 783,[4] the trial court was nonetheless empowered to award custody of Jennifer to the Cains, the maternal grandparents, upon a finding that Mark and Jean were unfit, incompetent or unable to care for Jennifer or that the welfare of Jennifer manifestly called for it. *In re Marriage of Garner*, 651 S.W.2d 564, 566[2] (Mo.App.1983); *Matter of C___ W___ B___*, 578 S.W.2d 610, 614[5] (Mo.App.1979).

The thrust of Mark's first point, as we perceive it, is that the conduct of Mark and Brenda Watson in Jennifer's presence, as narrated by the trial court, was not, as a matter of law, sufficiently culpable to brand Mark unfit to be Jennifer's custodian. Whatever merit, if any, that might inhere in that contention need not be assayed, however, inasmuch as there was abundant evidence adverse to Mark regarding other aspects of parental fitness.

As noted elsewhere in the trial court's findings, there was testimony that Mark

1. Jean, an epileptic, concedes that she, alone, is unable to take care of Jennifer, who was seven years of age at time of trial.

2. Hon. Jack A. Powell, whose untimely death occurred October 15, 1984.

3. A woman 27 years of age at time of trial. Mark, also 27 at time of trial, testified he planned to marry her after his marriage to Jean was dissolved.

4. The version of § 452.375.3 that became effective September 28, 1983, provided, in pertinent part: "The court may award joint custody or sole custody to either parent, *or, when the court finds that each parent is unfit or unable, and that it is in the best interest of the child, then to a third party.*" (emphasis added)

has an uncontrollable temper and that he had physically abused Jean on numerous occasions. Although much of that testimony came from Jean and was "discounted a great deal" by the trial court, there was, as the trial court pointed out, other evidence to the same effect including Mark's own admissions that he had hit Jean, slapped her across the nose, grabbed her hair, knocked holes in the wall of their residence with his fists, and broken a chair in anger. Additionally, there was evidence that Mark, in times past, had smoked marijuana, that he does not show his love for Jennifer, and that he had made promises to her that he did not keep, which distressed her.

There was also evidence, including photographs, that Brenda Watson had administered an excessively forceful spanking to Jennifer for soiling her pants. This led to a child abuse investigation by juvenile authorities. A family counselor who conducted a parenting skills class attended by Mark and Brenda Watson (at the instance of juvenile authorities) testified that in his opinion Mark was unfit to have custody of Jennifer and that Jennifer's well-being would be endangered if Mark were awarded custody and married Brenda Watson.

The foregoing is some, but not all, of the evidence adverse to Mark on the issue of fitness. It is evident from the record, and from our reading of the trial court's findings as a whole, that the segment of the trial court's findings seized upon by Mark in his first point was but one of several aspects of the case which the trial court found negative to Mark. We therefore reject Mark's contention that the trial court misapplied the law by adjudging him unfit solely because of what occurred between him and Brenda Watson in the presence of Jennifer.

■ Having so ruled, we proceed with review under Rule 73.01(c), Missouri Rules of Civil Procedure (16th ed. 1985), and *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), applicable in dissolution cases, *Whitenton v. Whitenton*, 659 S.W.2d 542, 546[1] (Mo.App.1983), and, specifically, custody disputes, *Elfrink v. Elfrink*, 620

S.W.2d 386, 388[2] (Mo.App.1981). We must sustain the trial court's decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

The transcript of the testimony, which we have carefully read, extends to 600 pages, not counting the deposition of a physician which was received in evidence in its entirety, and which we have likewise read. Additionally, the trial court had before it uncounted pages of records from hospitals, physicians, psychologists and clinicians. Summarizing this mass of evidence would extend this opinion to unacceptable length and would serve no precedential purpose.

■ Bearing in mind that each child custody dispute must be evaluated and resolved on its peculiar facts, rather than in terms of academic rules, *Stockton v. Guthary*, 415 S.W.2d 308, 311[2] (Mo.App. 1967), that the trial court is arbiter of the facts and may believe or disbelieve any of the testimony in whole or in part, *In re Marriage of Jackson*, 592 S.W.2d 875, 877[2] (Mo.App.1980), that the trial court is in a better position than us to judge the credibility of witnesses, their sincerity, character and other trial intangibles that are not revealed in the trial record, *H—— v. H——*, 637 S.W.2d 432, 434[2] (Mo.App. 1982), and that we may reverse the trial court's decision as against the weight of the evidence only if we have a firm belief that the judgment is wrong, *H.D. v. E.D.*, 629 S.W.2d 655, 657[2] (Mo.App.1982), we have concluded that the trial court's order regarding Jennifer's custody should not be disturbed.

■ Acknowledging that a parent has the paramount right to the custody of his minor child as against third persons unless it is established that he is an unfit person or is unable to care properly for the child, *In re Wakefield*, 365 Mo. 415, 283 S.W.2d 467, 472[7] (banc 1955), we find the evidence sufficient to support the trial court's finding that Mark was unfit to be Jenni-

fer's custodian, and we cannot say that such finding was against the weight of the evidence. Having earlier rejected Mark's theory that the trial court found him unfit solely because of his conduct with Brenda Watson in Jennifer's presence and thereby misapplied the law, we deny the first assignment of error.

■ Mark's second point is essentially a reprise of the first. He asserts the trial court's finding that he was unfit is not supported by substantial evidence and is against the weight of the evidence in that the finding that his conduct with Brenda Watson was equivalent to having sex in the presence of Jennifer, coupled with the record as a whole, does not support a finding of unfitness.

As emphasized in our discussion of the first point, we are persuaded that Mark's conduct with Brenda Watson in Jennifer's presence was but one of several factors on which the trial court based its finding of unfitness. Having determined, in denying the first point, that the trial court's custody order was based on substantial evidence and was not against the weight of the evidence, we need say nothing further on the second point. It is denied and the judgment is affirmed.

PREWITT, C.J., HOGAN, P.J., and MAUS, J., concur.