In re Marriage of REID.

George Dennis REID,
Petitioner–Respondent,

v.

Janice Marie REID,
Respondent–Appellant.

No. 14787.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 29, 1987.

M.L. Jack Davis, Flat River, for petitioner-respondent.

Diane C. Howard, Cape Girardeau, for respondent-appellant.

HOGAN, Judge.

In this proceeding for dissolution of marriage, respondent Janice Reid (to whom we shall refer as the defendant) appeals from the provisions of the decree awarding principal custody of the children to the petitioner (to whom we shall refer as the plaintiff) and further appeals from the division of marital property.

The parties were married March 23, 1973, at Alton, Illinois, and were finally separated June 18, 1985. They are the parents of two children, a female child born April 13, 1976, and a male child born March 23, 1980.

The parties are relatively young people. At the time of trial, plaintiff was 35 years of age; defendant was 34. The plaintiff was a self-employed construction worker; defendant had no particular marketable skills, but was employed as a waitress.

The parties' marriage was never very successful. The defendant testified that she first considered leaving her husband "maybe five or six years" before their final separation, but apparently the parties got along without remarkable incident until the summer and fall of 1985. About this time, plaintiff was working in St. Louis, commuting to the family home in Ellington, Missouri, "maybe once a week, sometimes on the weekends." The defendant became convinced that she and the plaintiff needed to consult a "counselor" because the plaintiff was not communicative. Plaintiff promised to see a counselor at the VA Hospital in Poplar Bluff, but failed to keep the appointments the defendant made for him.

One of the major sources of difficulty between the parties was the defendant's association with one Mike Lilliker, a "counselor" employed by the Reynolds County School District. Lilliker and the defendant became acquainted in April 1985. Very shortly thereafter, the defendant began confiding her personal problems to Lilliker —in her words, "[p]ersonal things as regarding my children, my relationship with Denny [her husband], what I was going to do, schooling, a lot of things like that." Lilliker was not a marriage counselor, but he consulted with the defendant on several occasions, and gave her some literature which he believed would help her with her marital problems.

In June 1985, the defendant decided to go to Michigan. Her testimony, at one point, was that she was obliged to leave Ellington because the plaintiff had threatened her. Plaintiff emphatically denied the threat. Whether or not she was threatened, the defendant took her children to her sister's house in Grand Rapids, Michigan, without advising the plaintiff where she was going. The plaintiff located the defendant, and suggested that he come to Michigan. The defendant "didn't want that" but advised the plaintiff that she would return to Ellington.

It was the plaintiff's testimony that the defendant, upon her return from Michigan, left the children with him and went to Cape Girardeau with her stepfather. Although the precise sequence of events is not clear, it was about this time that defendant decided to go to Florida with Lilliker. Lilliker's testimony was that he intended to go to Florida, but did not initially plan to take the defendant along. Lilliker had a friend in Memphis who had indicated that the defendant might stay with her if the defendant needed a place to stay. However, when the defendant and Lilliker got to Memphis, Lilliker's friend was not at home. The defendant and Lilliker went on to Florida, where they stayed about a week. Both Lilliker and the defendant assured the court that their association was neither immoral nor improper. In July 1985, this action was commenced.

The trial court divided the custody of the children, ordering that the plaintiff have primary custody. The court further ordered that the defendant have custody of the children on the first and third weekends of each month from 7 p.m. Friday to 7 p.m. Sunday, and that the defendant have custody of her children from 12 noon June 10 to 12 noon July 22 of each calendar year. Defendant was also granted custody of the children from 12 noon December 25 to 12 noon January 1 every year. The defendant contends that this award of custody is not in the best interest of the children and further, that it constitutes a punitive award of custody based on the defendant's "perceived" misconduct.

■ We are cited to *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo.banc 1976), wherein our Supreme Court defined the scope of appellate review in court-tried cases. The teaching of *Murphy v. Carron* is that we should affirm the judgment of the trial court unless: 1) there is no substantial evidence to support it; 2) it is against the weight of the evidence, or 3) the trial court has erroneously declared or applied the law. We are admonished that we should exercise our authority to set aside a judgment or decree as being against the weight of the evidence cautiously, when an examination of the record generates a firm belief that the decree or judgment is wrong. *Murphy v. Carron*, 536 S.W.2d at 32. The defendant's thesis, nevertheless, is that we should accept her evidence as true and disregard the plaintiff's evidence. Such is not the law. In a dissolution case, as in other bench-tried cases, the trial court is arbiter of the facts and may believe or disbelieve any of the testimony in whole or in part. *In re Marriage of Campbell*, 685 S.W.2d 280, 283[4–6] (Mo.App.1985). In particular, disputes concerning the custody of children must be resolved on their peculiar facts, rather than in terms of academic rules. *In re Marriage of Campbell*, 685 S.W.2d at 283; *Stockton v. Guthary*, 415 S.W.2d 308, 311[2] (Mo.App.1967).

■ We have carefully examined the record and we find no abuse of discretion in the trial court's award of custody. Our courts have on many occasions held that custody of the children may be awarded to the father if such an award serves the best interest of the children, even though the mother is a fit and proper custodian. *Ackfeld v. Ackfeld*, 483 S.W.2d 614, 616 (Mo.App.1972); *Hugeback v. Hugeback*, 444 S.W.2d 23, 28 (Mo.App.1969). There is substantial evidence in this record that the plaintiff is and has been a concerned and effective parent. Gene Pratte, a family counselor to whom the plaintiff and the children were referred, believed that the children were getting along "okay" in their present situation, and the childrens' teachers testified that they were doing well in school. The plaintiff testified that he is usually at home by 4:30 or 5:30 p.m., and that he has reliable baby-sitters available if it is necessary for him to be away from home. The defendant argues that her daughter was, on one occasion, subjected to some sort of sexual molestation by a relative of a baby-sitter no longer employed by the plaintiff and maintains that this demonstrates plaintiff's insensitivity to the welfare of his children. This argument is not supported by the record. The incident was investigated by the Division of Family Services and the case worker who investigated the reported molestation had "no concern

about the children being with [the plaintiff]." To reiterate, there is no evidence in the record before us which would compel the conclusion that the plaintiff is not a fit custodian of his children.

■ The defendant further contends that the award of custody is punitive. She argues that an award of custody should not be made to reward or to punish either parent. As an abstract principle, we agree that a punitive award of custody is improper. *M.D.R. v. P.K.R.*, 716 S.W.2d 866, 868 (Mo.App.1986); *Bashore v. Bashore*, 685 S.W.2d 579, 581 (Mo.App.1985). Even so, the character of a parent is a proper subject of inquiry when custody of a child is at issue, *In re Marriage of R.R.*, 575 S.W.2d 766, 768[4] (Mo.App.1978), and if the defendant's sojourn with Mr. Lilliker was not immoral, it was grossly imprudent and irresponsible, and scarcely the sort of conduct one would expect of a conscientious parent.

We are not convinced, moreover, that the award of custody was intended to punish the defendant. The trial court's order recites that the defendant "left the children with [plaintiff] and went to Florida with MIKE LILLIKER for approximately one (1) week and did not inform [plaintiff] of her whereabouts ..." but there is no specific finding that the defendant is not a fit and proper custodian of her children. It is a familiar principle that when both parents are fit custodians, a child's best interest is usually served by a wholesome association with both parents. *In re Marriage of Bradford*, 557 S.W.2d 720, 725 (Mo.App. 1977); *Asbell v. Asbell*, 430 S.W.2d 436, 438[6] (Mo.App.1968). On the record presented, the trial court could readily have found that the plaintiff owns a comfortable residence at Ellington, in which he and the children live, the children are doing well in their present circumstances, and, despite defendant's arguments to the contrary, the plaintiff is a concerned and effective parent. Defendant, by contrast, is employed as a waitress at Cape Girardeau, has no residence of her own at present, and has been obliged to leave her children with her stepfather, whose health is poor. The defendant has custody of her children on alternate weekends, during the summer, and at Christmas. We do not disturb a trial court's award of custody unless it is manifestly erroneous and the welfare of the children appears to require a different disposition. *Wells v. Wells*, 623 S.W.2d 19, 22 (Mo.App.1981); *In re Marriage of Powers*, 527 S.W.2d 949, 952 (Mo.App.1975). We cannot confidently say that the trial court's award of custody does not serve the childrens' best interest or that it represents a punitive award of custody made without regard to their best interests. The point is without merit.

■ The defendant's further point is that the trial court's distribution of marital property "was an abuse of discretion ... in that it was not supported by the weight of the evidence." The point has not been very well briefed by either party, but from the record available to us, it appears that the trial court awarded the plaintiff the marital home and its furnishings (except dining room furniture and a case clock), a pickup truck valued at $2,800, subject to an encumbrance in the amount of $900; the tools of his trade, valued at $3,000, and certain personal belongings. The plaintiff was ordered to assume marital debts in the amount of $4,660. The plaintiff was further ordered to pay the defendant the sum of $17,000 as and for her interest in the marital home and $2,500 as and for her interest in the household goods and furnishings. The defendant was also awarded her dining room furniture, a car valued at $2,000, a case clock, and her personal goods and belongings.

■ In particular, the defendant complains of the valuation of the family home. In her brief, she argues the valuation of the marital home is not supported by the testimony of either party. There was evidence that on their joint income tax return for 1983, the parties valued the marital home at $33,568. Somewhat similar statements have been held to constitute admissions against interest, *State ex rel. State Highway Commission v. Langley*, 422 S.W.2d 309, 314–315[4] (Mo.1967); *Manlin v. Manlin*, 638 S.W.2d 295, 296–297 (Mo. App.1982), and the defendant is in no posi-

tion to repudiate the value she and her husband assigned to their home for federal tax purposes.

While we do not propose to discuss the distribution of property at length, it appears that if the value of the items distributed to each spouse were tallied, the division is almost equal. The plaintiff received the family home ($34,000), the furnishings ($6,500), his tools ($3,000), and a pickup truck ($2,800, subject to a $900 encumbrance). Plaintiff was ordered to assume marital debts in the amount of $4,660. If one subtracts the amounts he is ordered to pay the defendant in cash ($17,000 and $2,500), the value of that part of the marital estate awarded to the plaintiff is $21,-240. By our calculations, the value of the defendant's share is $21,500. In the final analysis, the division of marital property lies in the discretion of the trial court, *Hanson v. Hanson*, 738 S.W.2d 429, 438 (Mo. banc 1987), and we find no abuse of discretion in this case.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.