Vilma (Lasswell) SHORTT, Respondent,

v.

Evert Earl LASSWELL and Gladys
Louise Lasswell, Appellants.

No. 15626.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 15, 1989.

Richard D. Bender, Sherwood, Honecker
& Bender, Springfield, for appellants.

Jerry L. Reynolds, Ronald A. Conway,
Jerry L. Reynolds & Assoc., P.C., Spring-
field, for respondent.

HOLSTEIN, Chief Judge.

Paternal grandparents, having custody
of their grandson pursuant to divorce de-
cree, appeal from a modification of that
decree in which the child's mother is award-
ed custody. Vilma (Lasswell) Shortt and
Larry Dean Lasswell were divorced in
Grayson County, Texas, on August 22,
1984. Their son, C.M., born September 17,
1977, began living with his paternal grand-
parents two months before the divorce.
The Texas decree provided that the pater-
nal grandparents, Evert Earl and Gladys
Louise Lasswell, would retain custody
while the parents received only visitation
privileges.

Four months after the divorce, Vilma
moved to Greene County. On June 17,
1985, she married David Shortt. In July of
1985, she filed this action to modify the
divorce decree and gain custody of C.M.
C.M.'s father and the paternal grandpar-
ents opposed the motion.

The court's modification decree found
that Vilma and the Lasswells were "fit and
proper" persons to have custody of C.M.,
but due to changed circumstances, Vilma
was awarded custody of C.M. In their only
point, appellants claim there was insuffi-
cient evidence to support a finding of a
substantial change in the circumstances of
either the child or his custodians to justify
a change in custody.

The familiar standard of review found in
*Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.
banc 1976), is applicable to this appeal of a
judgment granting modification of the cus-
tody provisions of a divorce decree. *In re
Marriage of LaFon*, 733 S.W.2d 51, 52
(Mo.App.1987). Furthermore, "the appel-
late court defers to the trial court on factu-
al issues because it is in a better position
... to judge the credibility of witnesses ...
As the trier of fact, the trial court has
leave to believe or disbelieve all, part or
none of the testimony of any witness." *In
re Adoption of W.B.L.*, 681 S.W.2d 452,
455 (Mo. banc 1984). When there is con-

flicting evidence, the appellate court should review the facts in a light favorable to the trial court's findings. *In Interest of M.E.W.*, 729 S.W.2d 194, 196 (Mo. banc 1987). With these principles in mind, we turn to the facts.

Vilma has remarried and has established a stable home life. Both she and her husband are employed by Zenith. They own a home in Ozark, Missouri, in which C.M. has his own room. Since the marriage, Vilma and her husband have had a daughter.

According to Vilma, the Lasswells received custody of C.M. shortly before, and after, the dissolution decree because her living conditions in Texas were poor, and she could not afford to support him. After she moved to Missouri, problems have arisen between the Lasswells and Vilma. She was subjected to "verbal abuse" by Mr. Lasswell in front of her child after having visited the child's school to obtain school records. She also testified that despite her efforts, the grandparents have not responded to her attempts to communicate. On at least two occasions, Mr. Lasswell yelled at Vilma as she was leaving with C.M. for a visitation period in the presence of a witness. However, neither witness could understand what was said.

The grandparents are not in good health. Mr. Lasswell is disabled from employment due to a back ailment and weighs over three hundred pounds. Mrs. Lasswell was recently hospitalized. Mr. Lasswell admitted his disability and that Mrs. Lasswell had recently been hospitalized. However, he contends that their conditions remain unchanged from when he and his wife were appointed custodians of C.M.

Mr. Lasswell admitted to the bad situation between he and Vilma, but cast the blame for lack of communication on her. He claims that on one occasion, he refused her visitation because she would not divulge her address. He also complains that Vilma refuses to talk to him when he calls her on the phone. He admitted making remarks to a friend of Vilma concerning her alleged misconduct with a man.

The court questioned C.M. According to the child, he preferred staying with his grandparents and believed a month was too long to stay with his mother. When questioned about how he thought his grandparents felt about the amount of time he spent with his mother, C.M. said "I don't think they like it."

Modification of a custody decree is governed by statute:

The court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the *circumstances of the child or his custodian* and that the modification is necessary to serve the best interest of the child.

§ 452.410 (emphasis added). The custodial grandparents contend there is no evidence of a change in their circumstances or C.M.'s. They acknowledge that when custody has been awarded to nonparents, there is an exception to the requirement that there be a showing of a change of circumstances of the child or the custodian. However, they contend the exception is not applicable in this case.

The exception is laid out in *Callaway v. Callaway*, 590 S.W.2d 700 (Mo.App.1979). In that case when the parents were divorced, a home study report was prepared which found that neither parent was mature enough to assume custody of the child. Consequently, the paternal grandmother was awarded custody. Sometime later, a modification proceeding was commenced by the mother against the grandparents. The mother's evidence was that she had remarried, had a stable home life, and was capable of caring for the child. *Id.* at 701. The court stated:

[W]here a mother, who has been denied custody in favor of a non-parent because of her parental immaturity, shows a remarriage, coupled with increased maturity and the desire and apparent ability to be a parent in fact, there should be no doubt such circumstances may be the basis for modification.

*Id.* at 702. The question now raised is whether a finding of former parental immaturity is an essential element of the exception expounded in *Callaway*.

A later case further clarifying the rule is *Esry v. Esry,* 628 S.W.2d 700 (Mo.App. 1982). The evidence there contained no showing of parental immaturity. In *Esry* the mother was actually given custody in the initial divorce decree, negating any suggestion of parental immaturity as existed in *Callaway*. Her temporary loss of custody was pursuant to her ex-husband's motion to modify. *Id.* at 701. The evidence in *Esry* that the mother "ha[d] remarried, established a home in California and would be able to adequately care for [the child]" was found sufficient to justify granting the mother custody. *Id.* at 702. Consequently, it appears that the test is not whether the mother was once immature and is now mature. The question is whether the cause or causes of the placement of the child with third parties has abated, and if so, whether the parent is now fit for custody and modification is necessary to serve the child's best interests.

█ In applying the exception to this case, the cause of the placement of the child was the mother's inability to provide for the child's economic needs due to her poverty. That cause no longer exists. Vilma showed a remarriage, the establishment of a stable home, substantial income, and the ability and desire to care for C.M. Certainly this evidence is sufficient to justify a modification of the custody provision of the divorce decree.

█ Even if the exception requires a finding of immaturity followed by increased maturity to support modification, there are other factors in this case which would justify a change of custody. Both parties presented evidence of a falling out between C.M.'s mother and his grandfather. There were problems with visitation, a lack of communication, and at least one instance when the grandfather verbally abused the mother in front of C.M. Furthermore, C.M. told the court that his grandparents did not like him visiting his mother. Longstanding authority in Missouri has held that "interference with visitation of and attempted alienation of a child from a parent may be the basis for modification." *Christianson. v. Christianson,* 592 S.W.2d 505, 508 (Mo.App.1979). *See also Gentry v. Simmons,* 754 S.W.2d 579, 582 (Mo.App.1988); *O'Loughlin v. O'Loughlin,* 712 S.W.2d 450, 452 (Mo.App. 1986). Under such circumstances, a trial court does not abuse discretion in finding that modification is necessary to serve the best interests of the child.

In light of the above analysis of the exception to the statutory rule, the fact that the relationship between C.M.'s grandparents and his mother has deteriorated, and the "traditional belief that it is in the best interest of a young child to be placed in the custody of a natural parent," *Esry v. Esry, supra,* at 702, we find that the order of modification is supported by substantial evidence and does not erroneously declare or apply the law. Consequently, we affirm.

CROW, P.J., and GREENE, J., concur.