794 S.W.2d 321 (1990)
In re the MARRIAGE OF Cindy Lou CARTER and Jerry Dale Carter.
Jerry Dale CARTER, Movant-Respondent,
v.
Barbara ARNETT, Maternal Grandmother-Appellant.
No. 16131.
Missouri Court of Appeals, Southern District, Division Two.
August 16, 1990.
No appearance for movant-respondent.
Joseph W. Rigler, Law Office of J. Max Price, for maternal grandmother-appellant.
MAUS, Judge.
The marriage of Cindy Lou Carter and Jerry Dale Carter was dissolved January 10, 1986. The court distributed their property and placed custody of the parties' three minor children with Mrs. Barbara Arnett, the maternal grandmother. Each parent was ordered to pay child support to the grandmother. The father's Motion to Modify was filed June 24, 1987. The mother died before that motion was heard on October 25, 1988. The court modified the decree of custody by awarding the legal and actual custody of the three minor children *322 to the father, Jerry Dale Carter, granting the grandmother specified periods of temporary custody and visitation. The father's obligation to pay child support was terminated. A supersedeas bond was posted. The grandmother appeals.
This court must first address the grandmother's contention that upon the death of the mother the dissolution action abated and the trial court had no jurisdiction to modify the custody decree. She cites cases and relies upon the following language:
"Prior to the dissolution act, a Missouri court derived its jurisdiction over a divorce proceeding from the divorce action itself. Schumacher v. Schumacher, 223 S.W.2d 841, 845 (Mo.App.1949). The death of either spouse abates that jurisdiction. Thereafter, the court no longer maintains the authority to modify a divorce decree. Id. See also, In re B.R.F., 669 S.W.2d 240, 244 (Mo.App. 1984); Leventhal v. Leventhal, 629 S.W.2d 505, 507 (Mo.App.1981). When, in the case at bar, the mother died, the continuing jurisdiction of the divorce court over custody abated. Tomlinson v. O'Briant, 634 S.W.2d 546, 548 (Mo. App.1982). The present Dissolution Act has not changed those principles. In re B.R.F., supra at 244." In re Marriage of Tuttle, 764 S.W.2d 99, 100 (Mo.App. 1988).
At first blush, that language lends credence to the grandmother's contention.
In general, an action which is personal abates upon the death of a party. 1 Am. Jur.2d, Abatement, Survival, and Revival, § 49. Initially, a decree dissolving a marriage is premised upon the resolution of the issue of the marital status of the two individuals. That issue is personal to those individuals. When an action is pending upon the issue of marital status, it is appropriate to hold that such an action abates upon the death of either husband or wife. State ex rel. Dubinsky v. Weinstein, 413 S.W.2d 178 (Mo. banc 1967). However, an action for the dissolution of marriage may involve not only the issue of marital status, but also the issue of the distribution of property and the issue of the custody of children. When the issue of marital status has been resolved by a decree dissolving a marriage, the issue of the distribution of property is not personal. On that basis, the death of a party after a decree of dissolution has become final does not cause an action pending on the issue of the distribution of property to abate. Fischer v. Seibel, 733 S.W.2d 469 (Mo.App.1987).[1]
The issue of the custody of children between a husband and wife is personal. As stated, if either dies before the entry of a decree of dissolution, the action, including the issue of custody, abates.[2] If either dies after a decree of dissolution, but before an order of custody, the action abates as to that issue. However, the entry of an order of custody does not terminate an action for dissolution. In effect, it remains pending for a possible modification of the decree of custody. In re Wakefield, 365 Mo. 415, 283 S.W.2d 467 (banc 1955).[3] See also Schumacher v. Schumacher, 223 S.W.2d 841 (Mo.App.1949). If a father and mother are the only parties to a decree of custody, upon the death of either, the action abates.

*323 "An order awarding the custody ... is a final order entitled to the force and effect of a final judgment, unless and until modified by the court making the decree.... The effect of such order may, of course, cease upon the death of one of the parties to the divorce action, for such action thereupon abates." In re Wakefield, supra, 365 Mo. at 422, 283 S.W.2d at 471.
Also see In re Marriage of Tuttle, supra; In re B.R.F., 669 S.W.2d 240 (Mo.App. 1984); Tomlinson v. O'Briant, 634 S.W.2d 546 (Mo.App.1982); Leventhal v. Leventhal, 629 S.W.2d 505 (Mo.App.1981).
However, under current practice the father and mother often are not the only parties to the issue of child custody. For example, in this case, the decree of dissolution placed the children in the custody of the grandmother. At that time, the provisions of § 452.375 included the following:
"The court may award joint physical custody or joint legal custody, or both, to both parents or sole custody to either parent, or, when the court finds that each parent is unfit or unable, and that it is in the best interest of the child, then to a third party." § 452.375.3 RSMo 1986. (Emphasis added.)[4]
This is a codification of previously recognized authority. State ex rel. Dubinsky v. Weinstein, supra; In re Marriage of Campbell, 685 S.W.2d 280 (Mo.App.1985); In re Marriage of Garner, 651 S.W.2d 564 (Mo.App.1983). Under the statute cited, an award of custody to a third party should have been based upon a written request.[5] Such an award should be followed by a written acceptance and acknowledgement of the decree. However, an actual exercise of custody can constitute such an acceptance and acknowledgement. In either manner, the third party becomes a party to the action on the issue of modification of the custody decree.
"Thus, although grandparents, or other third parties have no standing to litigate either custody or visitation where they claim such standing on the basis of actual custody unsupported by any decretal rights ... trial courts nonetheless have authority to place children with third parties when the natural custodians, the parents, are unfit or unable to undertake that custody. When so decreed, the third parties become the legal custodians." Warman v. Warman, 496 S.W.2d 286, 289 (Mo.App.1973). (Emphasis added.)
As a general rule, the death of a co-party does not cause an action to abate. 1 Am. Jur.2d, Abatement, Survival, and Revival, § 49. In the event of the death of either father or mother when custody has been awarded to a third party, the action does not abate as to the issue of custody between the surviving parent and the third party. Warman v. Warman, supra.[6]
In this case, the decree of dissolution, in an action to which the father was a party, found the grandmother was a fit and proper person to have custody of the three children. It awarded their custody to her. She assumed that custody and provided the children with care and a home. By her *324 actions, the grandmother became a party to that action. The decree under which she provided that care should not lose its vitality upon the death of the mother. The grandmother was named as an adverse party in the father's Motion to Modify. The issue of custody between the father and grandmother was before the court under its jurisdiction stemming from the dissolution action and as to that issue the action did not abate on the mother's death.
The grandmother's basic contention is that the trial court erred in modifying the decree of custody because, when measured by the correct standard, there is no substantial evidence to support that modification, or in the alternative, that modification is against the weight of the evidence.
The fundamental standard to be followed in awarding custody is established by § 452.375. That standard is the following:
"The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including: ...."
It is not necessary to restate here the factors declared by that section to be relevant. It would be impossible to restate here the factors declared by decision to be relevant. It must be acknowledged that, even though the evidence is undisputed, the weighing or balancing of the factors relevant to the best interests of the child is, in one sense, determining the weight of the evidence.
The fundamental standard governing the modification of a decree of custody is likewise established by statute. In relevant part § 452.410 provides:
"The court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."
Precepts to be observed in the application of that statute include the following.
"Generally speaking, except for good reason, a minor child should not be shifted periodically from one home to another. It is unwise to transfer custody frequently and not at all unless it is demonstrated by a preponderance of the evidence that the continued well-being of the children requires the change." Bashore v. Bashore, 685 S.W.2d 579, 581 (Mo.App.1985).
"[T]he cases emphasize the need for a showing of a significant change of circumstances directly affecting the welfare of the child in order to justify a custody change. The change in circumstances must be such as to give definite promise that the custody change will benefit the child in a substantial way." Schmidt v. Schmidt, 591 S.W.2d 260, 262 (Mo.App.1979).
"The change required by this statute must relate to a change in circumstances of the children or of their custodian, not the non-custodial parent." In re Marriage of D.L.(B.)M., 783 S.W.2d 473, 474 (Mo.App.1990).
A line of cases has been recognized as authority that the latter limitation is not applicable when custody of a child has been awarded to a so-called "third party."
"Consequently, it appears that the test is not whether the mother was once immature and is now mature. The question is whether the cause or causes of the placement of the child with third parties has abated, and if so, whether the parent is now fit for custody and modification is necessary to serve the child's best interests." Shortt v. Lasswell, 765 S.W.2d 387, 389 (Mo.App.1989). (Emphasis added.)
The basis for recognizing such an exception to the express limitation of § 452.410 is not clear. Perhaps it is because it is expressed or implied in the decree that the award of custody to a third party is temporary. Cf. Callaway v. Callaway, 590 S.W.2d 700 (Mo.App.1979). Whatever the basis, those cases recognize that a change in circumstances of a "reformed" noncustodial parent is but one factor to be weighed in determining if the best interests of the *325 child demand a modification of the decree. Shortt v. Lasswell, supra.
The factors to be considered are legion and vary from case to case. It is clear, however, that when children have been in the custody of a grandparent, in the circumstances of the children in this case, the weight to be assigned to the factor of biological parentage is but scant.
"This court holds that the presumption which favors vesting of custody in the natural parent must fall whenever the best interests of the child, for some special or extraordinary reason or circumstance, mandate that custody be vested in third persons, regardless of whether the evidence establishes the unfitness or incompetence of the natural parent." In Interest of K.K.M., 647 S.W.2d 886, 890 (Mo.App.1983).
The factors of the adjustment of the children to their circumstances and bonding with a custodian is being accorded increasing weight in proceedings dealing with the custody of children.
"Courts of this state have long recognized that the irresponsible conduct of a biological parent that results in a child being in a bonding familial custody relationship with third parties, constitutes a special or extraordinary reason or circumstance within the meaning of the foregoing rule. In Interest of Feemster, [751 S.W.2d 772 (Mo.App.1988) ] supra; In re B.W.D., 725 S.W.2d 138 (Mo.App. 1987); cf. H.D. v. E.D., 629 S.W.2d 655 (Mo.App.1982), involving termination. The development of the cases is outlined in a learned opinion in In Interest of K.K.M., supra." C.M.W. v. C.W., 786 S.W.2d 623, 625 (Mo.App.1990).
Also see Indermuehle v. Babbitt, 771 S.W.2d 873 (Mo.App.1989); Wilhelmsen v. Peck, 743 S.W.2d 88 (Mo.App.1987); Morgan v. Morgan, 701 S.W.2d 177 (Mo.App. 1985); Knoblauch v. Jones, 613 S.W.2d 161 (Mo.App.1981).
The three children involved in this case are: Kristena Irene Carter (born April 16, 1981), Krystal Mae Carter (born October 10, 1982), and Kristopher Dale Washington Carter (born December 4, 1984). They live in the Salem community in Dent County, Missouri. The marriage of their parents had been troubled. Their marital difficulties included the father's involvement with a girl friend at his place of employment. When the decree of dissolution was entered, the father had moved to Kansas City and was living in an apartment with the girl friend. The status of the mother is not clearly shown by the record. The children had been in the actual custody of the maternal grandmother for several months.
At that time, the grandmother was a widow 47 years of age. She quit work when awarded the custody of the children. She lives in a four-bedroom house on 2½ acres near Salem.[7] Her mother and other relatives live in the Salem community. After the dissolution, the children continued to live with her.
In April of 1987, the mother was hospitalized and on the brink of death. At the insistence of the grandmother, the children went to live with their father and his wife so the grandmother could devote herself to her dying daughter. After five or six weeks, the grandmother was informed the father had whipped Kristena, approximately six years old, with a belt and bruised her back. The grandmother drove to Independence and got the children. Since that time, they have lived with her. The wife testified that when the grandmother got the children, the grandmother said the father *326 would never see them again. The grandmother denied this.
A social worker of Dent County was present to testify at the modification hearing. Home studies of Dent County and Jackson County were admitted by stipulation. The report from Dent County made in April 1988 includes the following observations.
"Kristena Carter is attending school at Salem Oak Hill. She likes school and is doing well in school. She stated to me that she wants to live with her grandmother, but she would like to see her sister and brother.
Krystal Carter is now five years old and goes to Head Start four days a week at Green Forest School. She is very happy and stated that she wants to live with her grandmother.
Kristopher Carter is three years old and attends Mother Goose Playhouse about two days a week. He is now able to sleep all night and is very well adjusted to his home with Barbara Arnett."
The grandmother testified concerning her love for the children and their adjustment to their circumstances.[8]
As stated, at the time of the dissolution, the father was living with his girl friend in the Kansas City area. They were subsequently married. They have a child 2 years of age and twins one year old at the time of the hearing. The father was employed by Dillard's as a truck driver working as much as 70 hours per week. He earns approximately $30,000 per year. His wife works in a supply business earning $5.00 per hour. They live in a rented three-bedroom house in Independence. If awarded custody of the three children, they anticipated renting a larger house and that the wife would quit work to stay with the children.
A home study from Jackson County reported favorably upon their home, habits, reputation and care of their children. The father and his wife testified concerning their love for the children in question and their desire to raise them. A neighbor testified that the father and his wife were good parents.
Before the incident with the belt, the father and his wife visited the children approximately three times. They had all three of the children in Independence for one week in April 1986, and Kristena and Krystal for one week each in the summer of 1986. After the belt incident, the father did not again visit the children. He has not phoned them, sent cards or gifts to the children on birthdays or holidays. In short, he has not communicated with them. He said he would be uncomfortable in visiting them, and did not anticipate it would take so long to have a hearing upon his motion to modify.
The trial court made no specific findings of fact or conclusions of law. The evidence, which has been summarized, was largely undisputed. The factual and legal basis upon which the trial court predicated the modification of custody is not stated. The evidence demonstrates only two significant changes in circumstances. The first is the establishment of a home by the father. The second is a more long-standing adjustment of the children to their life in the Salem community and greater bonding with their grandmother. It must be concluded *327 the trial court predicated the change of custody upon the presumption favoring custody in the natural parent and the exception discussed in Shortt v. Lasswell, supra. In doing so, the trial court overlooked the fact that such presumption had disappeared. In Interest of K.K.M., supra. The father's changed circumstances must be considered with the other factors relevant to the best interests of the children. Those factors include the following undisputed conclusions found in the Dent County Home Study.
"1. Mrs. Arnett apparently is a very strong lady.
2. Mrs. Arnett has sufficient space for the three children in her home.
3. Mrs. Arnett is financially able to care for the children.
4. Mrs. Arnett is related to the children.
5. Mrs. Arnett is family oriented.
6. Mrs. Arnett is in good health and stable in the community.
7. When child care is needed for the children, there are several family members close by.
8. Mrs. Arnett is willing to cooperate with the court involving any reasonable visitation between the children and their father.
9. There is already a strong bond between the children and Barbara Arnett.
10. The children state they want to live with their grandmother."
When measured by the appropriate standard, the judgment of the trial court is against the weight of the evidence. The judgment of the trial court is reversed and the father's motion is denied.
HOGAN, C.J., and FLANIGAN, P.J., concur.
NOTES
[1] In Cregan v. Clark, 658 S.W.2d 924 (Mo.App. 1983), the husband and wife appealed from a decree of legal separation which also distributed their property. When the husband died during the pendency of the appeal, the court recognized the decree of legal separation was not final, but held that property rights were involved and the action did not abate. The court upheld the decree of legal separation and remanded the balance of the case. See 24 Am.Jur.2d, Divorce and Separation, §§ 176, 177.
[2] "Also, it is settled that a divorce action abates upon the death of either party and in that event the court's power over the custody of a child completely terminates." State ex rel. Dubinsky v. Weinstein, 413 S.W.2d 178, 181 (Mo. banc 1967).
[3] "After the entry of a valid decree between the parties dissolving their marriage, the court retains limited jurisdiction to make subsequent modifications and alterations of the provisions of the decree for a child's custody and support and for periodic maintenance to a spouse. In such modification proceedings, death of either party again operates to abate any further action of the court and the court loses jurisdiction except in a few limited matters." Leventhal v. Leventhal, 629 S.W.2d 505, 507 (Mo.App.1981).
[4] As amended in 1988, § 452.375 now contains the following provision: "Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:

. . . . .
(3) Third party custody;
(a) When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child manifestly demands, and that it is in the best interests of the child, then custody shall be awarded to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment for the child. Before the court places custody with a third person under this subdivision, the court shall make that person a party to the action;
(b) Under the provisions of this subsection, any person may petition the court to intervene as a party in interest as provided by law." (Emphasis added.)
[5] Although custody may be awarded to a third party in the absence of a written request. In re Marriage of Garner, 651 S.W.2d 564 (Mo.App. 1983).
[6] It is not necessary to consider the status of the third party in the event of the death of both the father and mother. Nor is it necessary to consider the status of a grandparent who has intervened on the issue of visitation. See § 452.402.
[7] The following is a description of the home contained in the Dent County Home Study.

"... The home is located on 2½ acres on Highway 19 South of Salem, about 4 miles from the city limits. The house is set back from the road several yards. The home has a large living room, dining room, kitchen, utility and pantry room, and four bedrooms. The girls share a room and Kristopher has his own room. It has been finished just for him and he is very proud of it. There is a very large yard with many trees. The children have a swing set, and good places to ride bikes. They also have a dog. There are toys to play with for both inside and outside play.
The children are very used to this environment as, since the time of the divorce in January, 1986, the three children have lived with their grandmother...."
[8] The record also includes the following remarkable exchange.

"[Appellant's counsel]: Your Honor, I believe counsel for Movant will stipulate I have several witnesses if they were called to testify. A lot of you folks are here as witnesses and I want toI knowI needed your testimony, but it's my understanding with the Court and counsel for Movant in chambers, that counsel for Movant would stipulate that if each of you were called to testify, that you would testify that you have been in the home. She provides proper food, clothing, cleanliness, the children are well disciplined. Will you stipulate if these folks testify that would be their testimony?
[Father's counsel]: Yes.
[Appellant's counsel]: And
THE COURT: All right.
[Appellant's counsel]: Ms. Rogers from Division of Family Service, the Court has accepted, admitted into evidence your report, so with that I'm going to conclude my case. Thank you all very much for coming over. Okay.
THE COURT: The Court also thanks you folks for being here. We appreciate your assistance."